Appeal of MONOLITH PORTLAND MID-WEST COMPANY, INC., of the Valuation and Assessment of its Cement Rock Lime, Cement Rock Shale, Gypsum, Sand and Gravel Production by the Department of Revenue and Taxation, State of Wyoming.

The STATE of Wyoming ex rel. STATE BOARD OF EQUALIZATION, Appellant (Appellee and Respondent below),

v.

MONOLITH PORTLAND MIDWEST COMPANY, INC., Appellee (Appellant and Petitioner below).

No. 4699.

Supreme Court of Wyoming.

Feb. 9, 1978.

V. Frank Mendicino, Atty. Gen., James D. Douglass, Senior Asst. Atty. Gen., Cheyenne, for appellant (appellee and respondent below).

Hugh B. McFadden, Jr., of Corthell, King, McFadden, Nicholas & Prehoda, Laramie, for appellee (appellant and petitioner below).

Before McCLINTOCK, RAPER, THOMAS, and ROSE, JJ., and ARMSTRONG, District Judge, Retired.

THOMAS, Justice.

The only question presented in this case is whether in fixing the value of the gross product of several mines owned by Monolith Portland Midwest Company, Inc. (Monolith),[1] the Department of Revenue and Taxation of the State of Wyoming lawfully included a presumed cost for transporting the mineral products to and placing them in a hypothetical storage facility. The Board of Equalization of the State of Wyoming (Board) has appealed from the Findings and Order of the District Court of the First Judicial District in and for Laramie County, which held that the Order of the Board of Equalization sustaining the position of the Department of Revenue and Taxation was not in conformity with law. The district court reversed that order of the Board and remanded the matter to the Board for the taking of further evidence to determine the cost of the loading process for these minerals from the point of their extraction in the mine pit, after blasting, onto trucks or railroad cars. In so ruling the district court effectively defined the completion of the mining process as that loading. The Findings and Order of the district court specifically stated that such cost would not include " * * * the 'hypothetical' placing of the product in a 'hypothetical' storage."

We must reverse the district court and remand this case for further proceedings. In so doing we will affirm the essential holding of the district court with respect to the inclusion of hypothetical cost factors in fixing the value of the gross product of a mine. Our reversal is premised upon the lawfulness of including in the value fixed for the gross product of a mine the actual cost attributable to moving the mine product from the point of loading to a point at which it has been removed from the pit or mine.

The statutory provision against which this case must be resolved reads as follows:

"(a) Based upon the information received or procured pursuant to W.S. 39–223, the department of revenue and taxation shall annually fix the value of the gross product, in appropriate unit measures of all mines and mining claims from which hydrocarbons, fissionable materials, fossil fuels, minerals or other valuable deposits are produced, at the fair cash market value of the product at the mine or mining claim where produced, after the mining or production process is completed.

"(b) The mining or production process is deemed completed when the mine product is removed from the pit, shaft, mine or well, and prior to any additional benefication [sic] or further processing is placed in bins, tanks, tipples, silos, stockpiles or other storage prior to transportation to market, or in the case of natural gas in the pipeline for transportation to market.

"(c) If the product as defined in subsection (b) of this section is sold at the mine or mining claim, the fair cash market value shall be deemed to be the price established by bona fide arms-length sale.

"(d) In the event the product as defined in subsection (b) of this section is not sold at the mine or mining claim by bona fide arms-length sale, or if the product of the mine is used without sale, the department of revenue and taxation shall determine the fair cash market value by application of recognized appraisal techniques." Section 39–224, W.S.

The Board contends that in order to give effect to the language of § 39–224(b), W.S.

---

1. The values as so fixed were to be utilized for both the ad valorem taxes levied pursuant to law and the mineral excise tax imposed by § 39–227.1:1, W.S.

specifying when the mining or production process is deemed completed it must define a hypothetical point at which the mined product " * * * prior to any additional benefication [sic] or further processing is placed in bins, tanks, tipples, silos, stockpiles or other storage prior to transportation to market, * * *." Monolith successfully persuaded the district court that the law of this state does not permit the inclusion of hypothetical cost factors in fixing the value of the gross product of mines, and the district court for purposes of this case held that the mining or production process was completed when the mined product was loaded into conveyances within the mine pit.

Monolith did not sell the product of its mines, but used them in its cement manufacturing process. Therefore these products could not be valued by determining the price established by bona fide arms-length sale in accordance with § 39–224(c), W.S., and it was necessary for the Department of Revenue and Taxation to apply recognized appraisal techniques in accordance with § 39–224(d), W.S.

Monolith manufactures cement at a plant located near Laramie, Wyoming. In the manufacturing process limestone, shale, and gypsum are used which Monolith supplies to itself from three separate quarries in the Laramie, Wyoming area. The limestone is mined from an open-pit quarry by blasting it loose from the quarry walls. It falls into piles within the pit from which it is loaded onto trucks and hauled directly to the cement plant at Laramie. The shale is mined in an identical fashion from a somewhat larger pit quarry, but it is loaded onto railroad cars and transported to the plant at Laramie. The gypsum is mined from a hillside quarry by a bench type operation. After being loosened by blasting it is loaded onto trucks and transported from the gypsum quarry to the shale quarry where it is stored prior to being loaded onto railroad cars and transported in them to the plant.

The sole purpose of this change in mode of transportation is that it is a more convenient and less expensive way of transporting the gypsum to the cement plant.[2]

■ With respect to the limestone and shale the Department of Revenue and Taxation arrived at the value of the gross product by a method of cost appraisal which Monolith here accepts as a recognized appraisal technique. While the Court has not considered directly a cost of production technique as a recognized method of appraisal it does appear to be an acceptable method of determining fair market value where there is no sale of personal property. *Michael Todd Company v. County of Los Angeles,* 57 Cal.2d 684, 21 Cal.Rptr. 604, 371 P.2d 340 (1962). See *C F & I Steel Corp. v. State Board of Equalization,* Wyo., 492 P.2d 529 (1972); *Scott Realty Co. v. State Board of Equalization,* Wyo., 395 P.2d 289 (1964); *Certain-Teed Products Corporation v. Comly,* 54 Wyo. 79, 87 P.2d 21 (1939).

In the costs which were included for the purpose of the appraisal the Department of Revenue and Taxation added a cost of 15 cents per ton plus a 20 per cent profit factor, or 3 cents, making a total of 18 cents per ton attributable to the transportation of the limestone and shale from the place of loading in the quarry to a hypothetical point of storage. This was uniformly done in each instance in which there was a valuation arrived at by the cost appraisal approach. The gypsum mined by Monolith was not valued by the cost appraisal approach but instead was valued by comparison with wallboard gypsum produced in two mines in the Big Horn Basin of Wyoming. The valuations for the Big Horn Basin mines, however, were accomplished by cost appraisal techniques which did include the 18 cent figure for placing the products of those mines in a hypothetical place of storage.

■ In *Hillard v. Big Horn Coal Company,* Wyo., 549 P.2d 293 (1976), this Court

---

2. The claims of Monolith also related to sand and gravel mined from a pit owned by it. The issue relating to the sand and gravel effectively was conceded by Monolith, however, and the valuation is not in issue in this appeal.

held that in applying a formula designed to separate mining costs from beneficiation costs the Board could not include royalty of 15 cents per ton when the actual royalty paid was 10 cents per ton. We now hold that in pursuing such a formula technique for appraisal of the value of the product of a mine the Department of Revenue and Taxation and the Board cannot include hypothetical costs any more than it would be permissible to include hypothetical royalty. Only actual costs may be utilized in the formula when a cost appraisal technique is applied for purposes of fixing the value according to § 39–224, W.S.

■ The Board contends that reliance upon hypothetical costs is required because of the mandates for uniform assessment (Art. 15, § 11) and equal uniform taxation (Art. 1, § 28) found in the Constitution of the State of Wyoming. These provisions do not require, however, that all minerals of the like kind be assigned the same value. Uniformity of assessment requires only that the method of appraisal be consistently applied. *Hillard v. Big Horn Coal Company,* supra. It is an intrinsic fact in mineral valuation that differences in values result from the application of an appraisal method. The Constitution of the State of Wyoming does not require the inclusion in a cost appraisal formula of hypothetical costs not borne by a particular mining enterprise in order to tax that firm equally and uniformly with those firms which actually do have such costs. Hypothetical costs have no relationship to an arms-length sale price which is the value to be established by recognized appraisal techniques when no sale occurs.

■ This conclusion requires that there be some further definition in the context of this case of what the actual costs are that may be included in the application of this appraisal technique. It appears to us that the district court faithfully applied the rule set forth in *Hillard v. Big Horn Coal Company,* supra, when it held that the product of Monolith's mines must be valued after loading. There have, however, been two amendments to this statute which became effective after the valuation dates which

were involved in *Hillard v. Big Horn Coal Company,* supra. In 1974 the legislature provided for the fixing of the value of the gross product " * * * at the fair cash market value of the product at the mine or mining claim where produced, after the mining or production process is completed, * * * *." Ch. 12, § 1, S.L. of Wyoming, 1974. In 1975 § 39–224, W.S. was adopted in its present form. Ch. 125, § 2, S.L. of Wyoming, 1975. Furthermore, in *Hillard v. Big Horn Coal Company,* supra, the Board did not attempt to include in value any costs beyond the loading point.

Monolith argues here, and it may be conceded that § 39–224(b), W.S., is not completely applicable in its instance because not all the factors stated to determine when the mining or production process has been completed occur in connection with those operations. We do not understand Monolith to deny, however, that the products of its mines are to be valued under § 39–224(a) after the mining or production process is completed.

This case demonstrates that different conclusions may be reached as to when the mining or production process is completed in an instance in which all of the factors mentioned in § 39–224(b), W.S., are not present. The phrase as used in § 39–224(a), W.S. is ambiguous, and an interpretation is in order. *County of Natrona v. Casper Air Service,* Wyo., 536 P.2d 142 (1975). Our task is to interpret this provision in accordance with the intention of the legislature as manifested by the language used in the light of the objects and purposes sought to be accomplished. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687 (1976). *State ex rel. Willis v. Larson,* Wyo., 539 P.2d 352 (1975); *Lohman v. Jefferson Standard Life Insurance Company,* Wyo., 525 P.2d 1 (1974); *School Districts Nos. 2, 3, 6, 9 and 10 v. Cook,* Wyo., 424 P.2d 751 (1967); *Hoffmeister v. McIntosh,* Wyo., 361 P.2d 678 (1961), reh.den. 364 P.2d 823 (1961).

While it is clear that Monolith does not place these mine products in bins, tanks, tipples, silos, stockpiles or other storage prior to transportation to market, this does not

foreclose the application of § 39–224(b), W.S. The first phrase of that statutory provision makes it quite clear that the mining or production process is deemed completed when the product is removed from the mine and not before. In this instance the district court in its Findings and Order held that the mining or production process was completed when the mineral products were loaded into trucks or railroad cars in the mine. Our holding is that the products are not to be valued until they actually have been removed from the mine in either the railroad cars or trucks. In each instance that point is determinable.

In the hearing before the Board of Equalization a witness for Monolith stated his opinion in each instance as to the distance from the point of loading to a point outside of the pit or mine. As we have defined the resolution of this issue, however, we must hold that when applying a formula designed to reach an assessment under a cost appraisal technique, the Board of Equalization, although not entitled to rely upon any hypothetical factors at least, is entitled to use the actual cost factor. Consequently, in this instance, the case must be remanded to the fact finding body in order to determine the actual cost of removing the limestone, the shale and the gypsum from the several points where they are loaded to the first points where they are no longer in the mines. We conclude this rule is consistent with the expressed legislative intent in those instances in which the minerals are not stored prior to transportation, although such storage is the normal situation contemplated by § 39–224(b). Any cost beyond that would be a cost of transporting the mineral in this instance, and our law is clear that costs of transportation are not to be included in the value fixed for mineral products. *J. Ray McDermott & Co. v. Hudson*, Wyo., 370 P.2d 364 (1962).

This case is reversed and remanded to the district court with instructions that it be remanded to the Board of Equalization so that it may receive evidence of the actual costs of removing the minerals from the mine or pit.