AMAX COAL COMPANY,
Appellant (Petitioner),

v.

WYOMING STATE BOARD OF
EQUALIZATION, Appellee
(Respondent).

STATE of Wyoming ex rel., Joseph B.
MEYER as Attorney General of the
State of Wyoming; and State of Wyo-
ming, Department of Revenue & Taxa-
tion, Appellants (Petitioners),

v.

WYOMING STATE BOARD of EQUAL-
IZATION and Amax Coal Compa-
ny, Appellees (Respondents).

Nos. 90–101–90–102.

Supreme Court of Wyoming.

Oct. 16, 1991.

Lawrence J. Wolfe and Catherine W. Hansen of Holland & Hart, Cheyenne, and Alan Poe of Holland & Hart, Denver, Colo., for Amax Coal Co.

Thomas D. Roberts, Cheyenne, for Wy. State Bd. of Equalization.

Joseph B. Meyer, Atty. Gen. and Vicci M. Colgan, Sr. Asst. Atty. Gen., for the State.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

Invoking judicial review following administrative agency decisions, these cross appeals present mineral product (coal) valuation issues under the mandates of statute and Wyo. Const. art. 15 for computation of state ad valorem and severance taxes. These consolidated appeals arise from separate decisions of the Wyoming State Board of Equalization (Board).[1]

In the first appeal, Case No. 90–101, Amax Coal Company (Amax) challenges the Board's determination that all federal Black Lung Excise Tax (BLET) collected and administered by Amax be included in computing the 1987 taxable value of coal production for ad valorem and severance tax purposes.[2] The Board denied Amax's contention that part of the BLET is attributable to non-taxable transportation and processing activities and that a portion of

the BLET should thus be deductible from taxable value.

In the second appeal, Case No. 90–102, the State Department of Revenue and Taxation (Department) and the State of Wyoming, ex rel. Joseph B. Meyer as the Attorney General (State),[3] appeal the Board's decision to allow Amax to deduct costs attributable to statutorily required reclamation activities from 1987 taxable value. The Board agreed with Amax that it was proper to deduct a percentage of on-going and final reclamation costs attributable to processing and transportation. That deduction was calculated on the basis of the percentage of land underlying processing plants, railroad trackage and out-of-pit haul roads proportionate to total mine acreage.

We affirm.

## FACTS

The essential facts in both appeals are not in dispute. Amax operates the Eagle Butte and the Belle Ayr surface coal mines in Campbell County, Wyoming. In 1988, the Minerals Division of the Department of Revenue and Taxation sent Amax separate notices of the 1987 valuation for both mines. The notices assigned ad valorem and severance tax valuations for 1987 coal production at the two mines. Taxable values were calculated using "net-back" ac-

---

1. The Wyoming State Board of Equalization is constitutionally established to perform taxation functions.

    The legislature shall provide by law for a state board of equalization. Wyo. Const. art. 15, § 9.
    The duties of the state board shall be to equalize the valuation on all property in the several counties and such other duties as may be prescribed by law.
    Wyo. Const. art. 15, § 10.
    W.S. 39–1–304 (1991 Cum.Supp.) provides in pertinent part:
    **Powers and purpose of board; removal.**
    (a) The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization, review final decisions of the department on state excise taxes and review department assessments of property and tax determinations. In addition, the board shall:

    [23 listed subparagraphs providing specific management and taxation responsibilities for the Board].

2. Valuation of coal for taxation assessment was restructured for production after January 1, 1990, by passage of Wyo.Sess.Laws ch. 53 (1990) which enacted W.S. 39–2–209 and 39–2–210. The language added to the statutory scheme by those sections is complex, but in part obviously addressed the apportionment of state and federal taxes in relation to mineral production valuation concepts.

3. With the exception of the section of this opinion discussing "standing" and the right of the Department and the State to appeal an adverse decision of the Board in Case No. 90–102, we use the term "Department" to refer collectively to both the Department of Revenue and Taxation and the State of Wyoming, ex rel. Joseph B. Meyer as Attorney General.

counting methods [4] and sales and cost information provided by Amax to the Department. The Wyoming Constitution's valuation requirement when emplaced by relevant statutes requires that mineral production be valued at the "mouth of the mine" for purposes of calculating ad valorem and severance taxes. Wyo. Const. art. 15, § 3; [5] W.S. 39–2–202(a), (b) and (d) (1987 Cum.Supp.).[6]

Pursuant to W.S. 39–2–201(d) (1985 Repl.), Amax timely appealed the Department's 1987 valuation figures to the Board for both mines. The appeals were consolidated for hearing before the Board because both appeals raised identical issues. At the evidentiary hearing, Amax presented two issues for consideration: (1) that the BLET, which the federal government requires Amax to collect from all purchasers of coal, should be allocated on a percentage basis to all aspects of a coal mining operation including processing, thus resulting in an allowable deduction for a portion of the excise tax amount; and (2) that the on-going and final costs of reclaiming the surface area underlying processing facilities and out-of-pit haul roads should also be deductible.

Following the hearing, the Board issued an order incorporating findings of fact and conclusions of law. In deciding the first issue, the Board agreed with the Department that Amax's allocation of BLET to processing activities was improper. Applying the same rationale, the Board also disallowed allocation of BLET to transportation activities. *See* note 9, *infra.* However, with regard to the second issue, the Board allowed Amax's requested deductions for on-going and final reclamation costs attributable to processing facilities, railroad trackage and out-of-pit haul roads. As its remedy, the Board ordered the Department to prepare a special directive adjusting the value of 1987 coal production at the two mines by proration between mining and non-mining facilities.

Amax and the Department filed timely petitions for review of the Board's order in the Sixth Judicial District Court. Pursuant to W.R.A.P. 12.09,[7] both appeals were certi-

4. In simple terms, "net-back" accounting as used here consists of determining "mine mouth value" by subtracting the "value" added to the coal by processing and out-of-pit transportation from the gross sales price of coal sold from each mine in the previous year. Controversy develops in application or proration of royalty, severance tax, ad valorem tax, federal black lung excise taxes and reclamation costs as projected with the effects of general overhead and profit in formula determination of value. Significant changes were statutorily made in coal valuation for state taxation purposes by more recent legislation, including specifically Wyo.Sess.Laws ch. 53 (1990). According to information furnished by the director of the mineral tax division of the Department of Revenue to the legislative Joint Revenue Committee at a June 26, 1991 meeting, changes in the coal valuation formula caused a valuation reduction in the 1990 coal production of $62 million. Joan Barron, *'Captive' coal values to be monitored,* Casper Star Tribune (Casper, WY), June 28, 1991.

5. Wyo. Const. art. 15, § 3 states:

All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements, and in lieu of taxes on the lands, on the gross product thereof, as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof.

6. W.S. 39–2–202 has been amended several times since 1987. The statute in effect for 1987 coal production stated in pertinent part:

(a) * * * the board shall annually value the gross product for the preceding calendar year, * * * at the fair cash market value of the product at the mine * * * where produced, after the mining or production process is completed.

(b) The mining or production process is deemed completed when the mineral product is removed from the pit, shaft, mine or well, and prior to any further benefication [beneficiation] or further processing is placed in storage prior to transportation to market * * *.

* * * * * *

(d) In the event the product as defined in subsection (b) of this section is not sold at the mine * * * the department shall determine the fair cash market value by application of recognized appraisal techniques.

W.S. 39–2–202 (1987 Cum.Supp.).

7. W.R.A.P. 12.09 provides in pertinent part:

If after such review [by the district court and limited to the matters specified in W.S. 16–3–114(c) ], the district court concludes the matter to be appropriate for determination by

fied to this court.[8] Because both appeals involve closely related issues, the appeals were consolidated for oral argument and decision.

We address these issues from the firm foundation of Wyoming mineral tax valuation case law provided by the basic and comprehensive analysis and resolution in the principal Wyoming case authored by Justice Thomas, *Hillard v. Big Horn Coal Co.*, 549 P.2d 293 (Wyo.1976). *See also C F & I Steel Corp. v. State Bd. of Equalization*, 492 P.2d 529 (Wyo.1972) and *McDermott & Co. v. Hudson*, 370 P.2d 364 (Wyo. 1962).

## STANDARD OF REVIEW

■ The Board is an administrative agency whose actions are governed by the Wyoming Administrative Procedure Act. W.S. 16–3–101(b)(i). The scope of review of an agency action is established in W.S. 16–3–114(c):

To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

When an administrative agency case is certified to this court under W.R.A.P. 12.09, we must review the decision "under the appellate standards applicable to a reviewing court of the first instance." *Application of Campbell County*, 731 P.2d 1174, 1175 (Wyo.1987).

■ Our review of an administrative agency decision is a two step process. First, we review the record taken as a whole to determine whether the agency's findings of fact are supported by substantial evidence. *Holding's Little America v. Board of County Com'rs of Laramie County*, 670 P.2d 699 (Wyo.1983). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. *Trout v. Wyoming Oil and Gas Conservation Com'n*, 721 P.2d 1047 (Wyo.1986). In reviewing an agency decision, we allow room for the agency to implement and administer its statutory responsibilities. *Pathfinder Mines Corp. v. State Bd. of Equalization*, 766 P.2d 531 (Wyo.1988). The burden is on the appellant to demonstrate that the agency findings are not supported by substan-

the Supreme Court, the district court may certify the case to the Supreme Court.

**8.** Prior to certification to this court, Amax filed a motion to dismiss the appeal brought by the State and the Department as co-petitioners. Amax premised its motion on the grounds that the State of Wyoming, ex rel. Joseph B. Meyer as Attorney General did not have standing to seek review of the Board's administrative decision because it failed to allege that it was "aggrieved" by the Board's decision and that, absent a statute authorizing an appeal, the Department was prohibited from appealing an adverse decision of an administrative agency (citing

*Walker v. Board of County Com'rs, Albany County*, 644 P.2d 772 (Wyo.1982) and *Pritchard v. State, Division of Vocational Rehabilitation, Dept. of Health and Social Services*, 540 P.2d 523 (Wyo.1975)). The motion to dismiss was not determined by the district court.

Amax renewed its motion to dismiss before this court in Case No. 90–102. Prior to oral argument, we denied the motion but granted the parties leave to brief and argue the issues set forth in the motion to dismiss. We dispose of this issue in the section of this opinion entitled "Standing to Appeal" under Case No. 90–102.

tial evidence. *Palmer v. Board of Trustees of Crook County School Dist. No. 1,* 785 P.2d 1160 (Wyo.1990).

Second, we ask if the conclusions of law made by the agency are in accordance with law. *Belle Fourche Pipeline Co. v. State,* 766 P.2d 537 (Wyo.1988). We summarized our standard for reviewing agency conclusions of law in *Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 871 (Wyo.1990):

> When we review agency conclusions of law, we are alert to three possibilities. The agency may correctly apply their findings of fact to the correct rule of law. *Belle Fourche Pipeline Co.,* 766 P.2d 537. In such case, the agency's conclusions are affirmed. But the agency could apply their findings of fact to the wrong rule of law or they could incorrectly apply their findings of fact to a correct rule of law. *Ballard v. Wyoming Pari–Mutuel Com'n of State of Wyoming,* 750 P.2d 286 (Wyo.1988). In either case, we correct an agency conclusion to ensure accordance with law. *Rocky Mountain Oil & Gas Ass'n v. State Board of Equalization,* 749 P.2d 221 (Wyo.1987). Our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed, *Casper Legion Baseball Club, Inc.,* 767 P.2d 608 [ (Wyo.1989) ]; if it is not, it is to be corrected, *Rocky Mountain Oil & Gas Ass'n,* 749 P.2d 221.

█ In Case No. 90–101, the essential facts are not in dispute and thus we focus our attention on the second stage of appellate review of an agency action—whether the Board's conclusions of law are in accordance with Wyoming law. In Case No. 90–102, we consider whether substantial evidence supported the Board's findings of fact; then, as in the prior case, we decide whether the Board correctly applied its findings to the correct rule of law. In neither case do we accord deference to the legal conclusions of the Board. *Natrona County School Dist. No. 1 v. Ryan,* 764 P.2d 1019 (Wyo.1988).

### CASE NO. 90–101

Amax states the issue on appeal in Case No. 90–101 as:

> Did the Wyoming State Board of Equalization err, in determining the taxable value for ad valorem and severance tax purposes of coal produced by Amax Coal Company during 1987, by including all of the federal Black Lung Excise Tax paid to Amax by its customers in the value of the coal at the mine mouth, rather than to exclude that portion of the amount paid on the value added to the coal by non-taxable transportation and processing activities?

Without defining the issue in so many words, Amax essentially argues that this court should set aside the Board's decision because the Board applied relevant law erroneously to the facts and circumstances in this case. *See Exxon Corp. v. Wyoming State Bd. of Equalization,* 783 P.2d 685 (Wyo.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).

26 U.S.C. § 4121 (1988 ed.) [Section 4121 of the Internal Revenue Code of 1986] states in part:

**(a) Tax imposed**

**(1) In general**

There is hereby imposed on coal from mines located in the United States sold by the producer, a tax equal to the rate per ton determined under subsection (b).

**(2) Limitation on tax**

The amount of the tax imposed by paragraph (1) with respect to a ton of coal shall not exceed the applicable percentage (determined under subsection (b)) of the price at which such ton of coal is sold by the producer.

**(b) Determination of rates and limitation on tax**

For purposes of subsection (a)—

(1) the rate of tax on coal from underground mines shall be $1.10,

(2) the rate of tax on coal from surface mines shall be $.55, and

(3) the applicable percentage shall be 4.4 percent.

Under 26 U.S.C. § 4218, coal that is used or consumed by the producer is also considered as having been "sold" for purposes of calculating and applying the BLET.

The Department did not allow Amax to allocate a portion of the BLET to nontaxable processing activities.[9] In affirming the action taken by the Department and construing the federal BLET statute within the context of state statutory and regulatory provisions for coal mine valuation, the Board resolved this issue by concluding:

> 18. As can be seen by a careful reading of the statute, the tax in question is on coal produced even though payment of the tax is delayed until the coal is sold or used by the producer. The initial rate of taxation as set forth in Section 4121(a)(1) is a rate per ton subject to a maximum limitation of a specified percentage of the sales price[ ]. *Clearly the basic tax structure anticipates an assessment per ton of coal produced notwithstanding the selling price thereof.* The inclusion of the percentage limitation was intended to prevent the tax imposed from being a disproportionately high percentage burden on lower priced coal. Black Lung Benefits Revenue Act of 1977, General Explanation, 1978 U.S. Code Congressional and Administrative News, page [73].

(Emphasis added.) The Board held that the BLET is properly calculated as an assessment per ton of coal mined regardless of the eventual selling price. Consequently, the Board did not allow the BLET to be apportioned between mining and processing or transportation costs.

Additional support for this result is found in the following conclusion of law as stated by the Board:

> 20. In addition, it would be somewhat incongruous to allow allocation of the [BLET] when the percentage limitation was effective but disallow allocation

when the specified amount per ton is binding. Amax in its own brief * * * recognizes and agrees that in the situation wherein the specified amount per ton is applicable, allocation of the tax would not be appropriate. Once again we fail to see why the calculation method established for the tax should have an effect on allocation.

■ There is no question that the BLET is attributable solely to mining operations and is not allocable to processing or transportation activities when coal is priced such that it is taxed at the specified rate of fifty-five cents per ton (i.e., coal priced at $12.50/ton or more). In effect, Amax argues that the 4.4% limitation applicable to lesser priced coal—as was the case with the coal produced at both Amax mines in 1987—creates a "window of opportunity" for a coal producer to allocate a portion of the BLET to non-mining activities—specifically processing and transportation.

We fail to find any rationale or authority for changing the character of the tax simply because the coal sells for a lower price. If the full BLET is attributable solely to mining activities when coal is taxed at the fifty-five cents per ton rate, then it is equally attributable solely to mining activities under the 4.4% protective limitation for less expensive coal.

Although Amax argues that the "mere mining" of coal does not trigger the tax, we are persuaded by the Board's comparison by analogy of the BLET to royalty payments discussed by this court in *Hillard,* 549 P.2d at 301–02 (emphasis added), where we stated:

> In their appeal the coal companies argue that a proper application of the formula would require that the royalty be prorated between the processing and mining aspects of their production opera-

---

9. In its consolidated appeals to the Board, Amax challenged the Department's refusal to allow allocation of a portion of the BLET to non-taxable processing activities. It appears from the record that the Department had previously allowed Amax to deduct a portion of the BLET attributable to non-taxable transportation activities. In rendering its decision, the Board or-

dered that the Department disallow the prior allocation to transportation activities. On appeal to this court, Amax contends that the similarities between processing and transportation activities require that they be treated identically for ad valorem and severance tax valuation purposes. We agree; however, by doing so, we also approve the present Board decision.

tions like any other indirect costs. * * * [I]n *Picard v. Richards,* 366 P.2d 119 (Wyo.1961), this Court adopted a definition of royalty, which generally is applicable, to the effect that it means a share of the product reserved by the owner of land for permitting another to use his property, and is a right to receive in kind or in money equivalent a stipulated fraction of the mineral products. It thus is apparent that *royalty must be paid for the privilege of mining, not processing,* and as has been indicated above, the value of the coal at the mine must be sufficient to pay both the costs of mining and royalty. * * * [The] royalty is a full component of the value of the coal at the mine, and is not to be apportioned between mining and processing as indirect costs may be.

Just as the royalty payments in *Hillard* applied to the "privilege of mining," so too does the BLET.[10]

We hold that the Board did not err in applying relevant law to the facts in this case and concluding that the BLET was not allocable to processing and transportation activities. We affirm the Board's affirmation of the Department's denial of allocation of BLET to processing activities. Similarly, we affirm the Board's disallowance of allocation of BLET to transportation activities previously condoned by the Department.

CASE NO. 90–102

The State and the Department, as co-appellants, raise two issues on appeal in Case No. 90–102:

Should reclamation "costs," although not yet incurred, have been allowed as a deduction from value for coal produced in 1987?

Even had reclamation costs been incurred, should they have been allowed as part of transportation and processing costs deducted from the value of coal?

*Standing to Appeal*

Prior to certification to this court, Amax filed with the district court a motion to dismiss the appeal brought by the State and the Department as co-petitioners. Amax premised its motion on the grounds that neither party had standing to seek review of the Board's administrative decision. The motion to dismiss was not determined by the district court. Thus, we begin by resolving the preliminary jurisdictional question of whether either the State or the Department, or both, have standing to appeal the adverse administrative decision of the Board in this case.

In *Washakie County School Dist. No. One v. Herschler,* 606 P.2d 310, 317 (Wyo.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980) (emphasis added), we discussed the concept of standing within the context of the right of a plaintiff to bring suit:

Standing is a concept used to determine whether a party is sufficiently affected to insure that a justiciable controversy is presented to the court. * * * It is a necessary and useful tool to be used by courts in ferreting out those cases which ask the courts to render advisory opinions or decide an artificial or academic controversy without there being a palpable injury to be remedied. However, *it is not a rigid or dogmatic rule but one that must be applied with some view to realities as well as practicalities. Standing should not be construed narrowly or restrictively.*

We apply the same jurisdictional criteria to examine Amax's challenge in this case.

---

**10.** Further authority on this subject can be found in current action taken by the Minerals Management Service (MMS), Department of the Interior, by amendment to 30 C.F.R. §§ 206.251 and 206.257 pertaining to the value of production from coal leases. The agency determined that the producer could "no longer * * * deduct or exclude the costs of Federal Black Lung Excise Taxes, abandoned mine lands (AML) fees, and State and local severance taxes from the value of coal for [federal] royalty [calculations]." 55 Fed.Reg. 35427 (1990) (to be codified at 30 C.F.R. § 206).

In making the decision, the MMS "concluded that these costs are part of the value of coal production and that MMS should return to its historical approach of requiring royalties to be paid on at least gross proceeds." *Id.*

Both sides briefed the question of whether the State and the Department have standing to appeal. Amax premised its motion to dismiss due to appellants' lack of standing on three factors: (1) the State failed to allege that it was aggrieved by the decision of the Board; (2) the State cannot be aggrieved by an agency carrying out a function, on behalf of the State, that the legislature has specifically delegated, and (3) the Department is prohibited from appealing under this court's rulings in *Walker v. Board of County Com'rs, Albany County*, 644 P.2d 772 (Wyo.1982) and *Pritchard v. State, Division of Vocational Rehabilitation, Dept. of Health and Social Services*, 540 P.2d 523 (Wyo.1975).

In contrast, the State and the Department assert that: (1) the State did allege that it was aggrieved; (2) the Attorney General has standing to appeal on behalf of the public interest of the State of Wyoming; and (3) the Department has statutory authority to seek review of the Board's order.

■ We agree with the State and the Department in this instance and hold that both have standing to appeal the adverse decision of the Board. In reviewing the record, we find that the State did allege that it was aggrieved by the decision of the Board. In petitioning the Sixth Judicial District Court for review, the Attorney General stated that he was acting "on behalf of the State of Wyoming in a matter of public concern * * *." Further, the Attorney General, on behalf of the State, cited as grounds upon which relief should be granted:

10. This matter concerns the proper valuation of coal for ad valorem and severance tax purposes. The Board acted contrary to law and the standards of W.S. 16–3–114(c)(ii)(A) in concluding that reclamation costs may be allocated as a cost of transporting and processing coal rather than a cost of mining coal.

11. The Board acted contrary to law and the standards of W.S. 16–3–114(c)(ii)(A) in concluding that reclamation costs not yet incurred will be allowed as a deduction from the value of the coal.

Contrary to Amax's assertion that the State failed to show "how" it was aggrieved by the Board's decision, we hold that the State adequately stated its aggrieved status in its challenge to the Board's action. The allocation of reclamation costs to non-mining activities and the Board's allowance of a deduction from the taxable value of the coal provide a direct and significant negative impact on the amount of ad valorem and severance taxes collected by the State. Such impact ultimately reduces the State's coffers and is thus of particular concern to the State. We hold that the State raised sufficient allegations in its petition for review to show that it was aggrieved by the Board's decision. We are not persuaded to the contrary by our reading of *State, Dept. of Personnel v. Colorado State Personnel Bd.*, 722 P.2d 1012 (Colo.1986), a case cited by Amax in its brief filed with this court in support of its motion to dismiss.

More importantly, W.S. 39–1–306 states:

Any person *including the state of Wyoming* aggrieved by any order issued by the board [of equalization], or any county board of equalization whose decision has been reversed or modified by the state board of equalization, may appeal the decision of the board to the district court of the county in which the property or some part thereof is situated.

(Emphasis added.) The legislature expressly granted the State specific statutory authority to appeal an adverse order issued by the Board. The Attorney General, acting pursuant to W.S. 9–1–603(a),[11] is designated by statute to act on behalf of the State in this type of proceeding.

Amax relies on *Walker*, 644 P.2d 772, and *Pritchard*, 540 P.2d 523, for the propo-

11. W.S. 9–1–603(a) states in part:
The attorney general shall:
(i) Prosecute and defend all suits instituted by or against the state of Wyoming, the prose-

cution and defense of which is not otherwise provided for by law[.]

sition that, while the State may have statutory authority to appeal a Board decision, the Department does not. In *Walker*, 644 P.2d at 774, we said "[t]he right to judicial review of administrative actions is entirely statutory." Further, we quoted the following from *U.S. Steel Corp. v. Wyoming Environmental Quality Council*, 575 P.2d 749, 750 (Wyo.1978), (quoting from *Klein v. Fair Employment Practices Com'n*, 31 Ill. App.3d 473, 334 N.E.2d 370, 374 (1975)):

> " 'Each statute must be carefully examined to discover the legislature's intent to restrict judicial review of administrative action. * * * While it is often said that barring constitutional impediments the legislature can preclude judicial review * * *, such intent must be made specifically manifest, and persuasive reason must exist to believe such was the legislative purpose. * * * Only upon a showing of clear and convincing evidence of contrary legislative intent should the courts restrict access to judicial review.' "

*Walker*, 644 P.2d at 774.

In *Walker*, the right to judicial review of the denial of an application for a liquor license was specifically and positively *forbidden* by statute. In the present case, W.S. 39-1-306 provides specific statutory authority *granting* the State the right to appeal an adverse decision of the Board. We are aware of no specific statutory provision explicitly precluding the right of the Department to appeal an adverse tax ruling on behalf of the State. The Department, as the administrative agency charged with the collection of tax revenues for the State, serves as the primary agent of the State in tax matters. W.S. 39-1-303(a)(i). Thus, by extension, the Department must be permitted to represent the State in this appeal.

The Wyoming taxation department has been reorganized and, in result, the department of revenue is now completely separated from the State Board of Equalization. *See* Wyo.Sess.Laws ch. 174 (1991). The resulting functional division of the Department to generally disconnect executive department tax collection activities from the rule making and review function retained by the State Board of Equalization provides a justification for differentiation of rights of appeal by the Department for judicial review when compared to our other cases addressing agency appeal in the non-taxation context. *See, e.g., Mekss v. Wyoming Girls' School, State of Wyo.*, 813 P.2d 185 (Wyo.1991) and *Pritchard*, 540 P.2d 523.[12] There is a further difference where here explicit right is provided for the State to appeal in W.S. 39-1-306.

### Reclamation Costs

We begin by deciding whether the Board's findings of fact are supported by substantial evidence. Then, as in the prior case, we examine the record taken as a whole to determine whether the Board correctly applied relevant law to the facts and circumstances in this case.

As a surface mine operator, Amax is obligated under federal and state regulations to reclaim areas disturbed by mining operations. 30 C.F.R. § 700.00, *et seq.* (Rev.1990); W.S. 35-11-101 through 35-11-403, 35-11-405, 35-11-406 and 35-11-408 through 35-11-1104. In providing for reclamation expenditures, Amax prorates a portion of its reclamation costs to each of its customers and includes the charge in the sales price of its coal.

In calculating its taxable value for 1987 coal production, Amax asserts that a deduction for a portion of its reclamation costs attributable to processing facilities and roadways is appropriate. Amax calculates the deduction by attributing a percentage of the reclamation costs to that portion of the total mine acreage covered by processing facilities and out-of-pit haul roads. The Board agreed that such allocation of ongoing and final reclamation costs to processing and transportation functions should be allowed.

---

**12.** It would actually make no difference for two additional reasons. Clearly, the Attorney General has the right under W.S. 39-1-306 and W.S. 9-1-603 relating to his duties to pursue this appeal. Finitely, the issue is rendered moot by our decision which affirms the decision of the Board as favoring the position requested by the taxpayer.

The Department, in citing *Appeal of Monolith Portland Midwest Co., Inc.*, 574 P.2d 757 (Wyo.1978) and *Hillard*, 549 P.2d 293, asserts that reclamation costs attributable to processing facilities and haul roads are not allowable deductions since, in the Department's opinion, the costs have not been actually incurred and thus are hypothetical. We disagree with the Department and affirm the decision of the Board.

The Board stated in its conclusions of law:

> 27. * * * [I]t does not seem appropriate to term "hypothetical" those expenses which are required to comply with statutes, regulations, permits, and bonds, and which are required to obtain new mining permits in the United State[s]. * * * These expenses therefore are actual and exist in the sales price for the mine product. Finally, it would be unjust to withhold a deduction until after the reclamation expenses are actually incurred inasmuch as at that time all coal production would have ceased eliminating the income stream against which the deduction could be taken as an expense.

The Board also concluded that:

> 25. Reclamation costs attributable to processing operations are costs attributable to processes after the product leaves the mine mouth and thus do not add value at that point. If there were no processing facilities, there would be no reclamation costs associated therewith. Unless reclamation costs are partially allocated to processing and deducted, there will be an increment of value in the sales price which represents cost[s] added to mine mouth value that are associated with activities which are beyond the mine mouth and not attributable to mining, and thus inappropriate.

There is substantial evidence supporting the Board's finding that Amax's reclamation costs are actual rather than hypothetical. The Board's rationale in concluding that a portion of the reclamation costs are appropriately deductible is in accord with relevant Board rules and regulations, covering ad valorem and severance taxes on mineral production. Contrary to the position adopted by the Department, there is no basis to require that actual reclamation expenses must be incurred before being allowed as a deduction.

It may appear at first glance that the Board and this court reach inconsistent results in these two cases. Such is not the case. We agree with the Board that federal BLET is solely a cost of mining and thus no portion of the tax is deductible in determining the mineral valuation for taxation purposes. Reclamation costs, on the other hand, are partly a cost of mining and partly a cost of processing and transportation as a circumstance of actual facilities and mining locations on site. These are real costs already accrued by Amax in present expenditures or for a future determinable expense. Consequently, allocation of a portion of the on-going and accruing final reclamation costs to processing and transportation is appropriate. *Hillard*, 549 P.2d 293.

We concur that the Board was correct in allowing Amax to deduct reclamation costs attributable to processing and post-mine mouth transportation and also approve the decision that the federal Black Lung Excise Tax is a mining cost.

The decisions of the Wyoming State Board of Equalization from which these appeals were taken are affirmed.