**TEXACO, INC., Petitioner,**

v.

**STATE BOARD OF EQUALIZATION
for the State of Wyoming,
Respondent.**

No. 92–138.

Supreme Court of Wyoming.

Jan. 14, 1993.

Richard E. Day, Stephenson D. Emery, and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, and John T. McKenna of Texaco Inc., Universal City, CA, for petitioner.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard, Sr. Asst. Atty. Gen., for respondent.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

MACY, Chief Justice.

This is an appeal from the State Board of Equalization's order denying Texaco, Inc.'s request to offset its tax overpayments against its severance tax assessments.

We affirm.

Texaco describes these issues:

1. Did the Board Of Equalization Err In Finding That Texaco's Claim For Credit By Virtue Of Overpayment Of Severance Taxes Was Barred By § 39–6–304(g) Of The Wyoming Statutes (1977)?

2. Did The Board Of Equalization Err In Finding That § 39–2–214(e) Of The Wyoming Statutes (1977) Was Not To Be Applied Retroactively?

The Board condenses its summary of the argument into this query:

Does Wyoming law permit an offsetting credit for severance tax purposes discovered as part of a comparison of records filed by the taxpayer with two separate state agencies?

## Facts

The issues raised in this appeal originated when the Department of Revenue and Taxation sent tax notices to Texaco indicating that it had underpaid its taxes for the years 1981, 1982, 1984, 1985, and 1987 (the notices required Texaco to pay taxes, penalties, and interest of $10,050.58, $22,241.68, $15,444.70, $9,585.94, and $1,391.98 for those years, respectively). The Department of Revenue based these notices on information generated by a contract auditor's reviews of Texaco's mineral production in Fremont and Washakie Counties. *See Union Pacific Resources Company v. State*, 839 P.2d 356 (Wyo.1992), for a complete discussion of such contract audits. Texaco filed objections to these assessments, and a hearing was scheduled.

At the time of the hearing, Texaco refined its contentions into this summary:

As a result of various contract audits, the Department of Revenue and Taxation assessed additional taxable value to Texaco for various tax years. Texaco does not challenge the methods by which the

increased assessments were obtained, or the amounts themselves. Texaco contends, however, that it is not liable for *payment* of additional severance taxes insofar as Texaco is entitled to credits from the Department of Revenue and Taxation that should offset any additional severance tax liability.

The Board concluded that Texaco was not entitled to the contested credits. Texaco filed a petition for review in the district court, and the district court certified the matter to this Court.

### Standard of Review

The Board is an administrative agency whose actions are governed by the Wyoming Administrative Procedure Act. Wyo. Stat. § 16–3–101(b)(i) (1990). The scope of review of an agency action is established in Wyo.Stat. § 16–3–114(c) (1990):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Further, our standard of review encompasses these principles:

When an administrative agency case is certified to this court under W.R.A.P. 12.09, we must review the decision "under the appellate standards applicable to a reviewing court of the first instance." *Application of Campbell County*, 731 P.2d 1174, 1175 (Wyo.1987).

Our review of an administrative agency decision is a two step process. First, we review the record taken as a whole to determine whether the agency's findings of fact are supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. In reviewing an agency decision, we allow room for the agency to implement and administer its statutory responsibilities. The burden is on the appellant to demonstrate that the agency findings are not supported by substantial evidence.

Second, we ask if the conclusions of law made by the agency are in accordance with law. We summarized our standard for reviewing agency conclusions of law in *Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871 (Wyo.1990):

"When we review agency conclusions of law, we are alert to three possibilities. The agency may correctly apply [its] findings of fact to the correct rule of law. In such case, the agency's conclusions are affirmed. But the agency could apply [its] findings of fact to the wrong rule of law or [it] could incorrectly apply [its] findings of fact to a correct rule of law. In either case, we correct an agency conclusion to ensure accordance with law. Our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed; if it is not, it is to be corrected."

*Amax Coal Company v. Wyoming State Board of Equalization*, 819 P.2d 825, 828–29 (Wyo.1991) (some citations omitted).

### Discussion

During the years 1981 through 1987, Wyo.Stat. § 39–6–304(g) (1985) was continuously in force. It provided:

> (g) Any excess tax found to have been paid, whether as the result of overpayment, an appeal or an erroneous assessment shall be refunded to the person paying the tax. All applications for refunds shall be made within two (2) years from the payment of the erroneous tax.

Texaco did not seek a refund of its overpayment of taxes pursuant to this statute. Section 39–6–304(g) was repealed effective January 1, 1989. The Legislature made the following provisions, which are pertinent to our decision in this case:

> **Section 2.** W.S. 39–6–304(a)(i) through (iv), (b), (d), (e) and (g) is repealed.
>
> **Section 3.** W.S. 39–6–301 through 39–6–307 as they were in effect prior to January 1, 1989 apply to production during the calendar year of 1988.
>
> **Section 4.** To implement the self assessment provisions of this article, and to provide taxpayers with clear reporting guidelines, prior to January 1, 1989 the department shall convert administrative valuation procedures into rules consistent with the Wyoming Administrative Procedure Act.
>
> **Section 5.** This act is effective January 1, 1989.

1988 Wyo.Sess.Laws ch. 90. In the same bill which repealed § 39–6–304(g), the Legislature created subsection (n) of § 39–6–304:

> (n) If a taxpayer has reason to believe that taxes imposed by this article have been overpaid, a request for refund shall be filed with the department on forms it prescribes prior to the end of the fifth calendar year following the calendar year which included the month for which overpayment was made. Refunds of two thousand dollars ($2,000.00), or less may be applied to subsequent payments for taxes imposed by this article. Requests for refunds exceeding two thousand dollars ($2,000.00) shall be approved in writing by the department prior to the tax-

payer receiving credit. All refunds granted are subject to modification or revocation upon audit.

Texaco made no application for a refund under this statute.

■ Texaco asserts that these statutes are no longer applicable. It claims that the Legislature enacted Wyo.Stat. § 39–2–214 (Supp.1992) in 1991 and intended for subsection (e) of that statute to have a retroactive effect. Section 39–2–214 provides in pertinent part:

> **§ 39–2–214. Valuation amendments and limitation period.**
>
> (a) Effective until March 1, 1994, the department is authorized to rely on final audit findings under W.S. 9–2–2003, taxpayer amended returns or department review, and to certify mine product valuation amendments for production in calendar year 1985 and thereafter, to the county assessor of the county in which the property is located, to be entered upon the assessment rolls of the county and taxes computed and collected thereon subject to appeal under subsection (g) of this section.
>
> (b) Commencing March 1, 1994, the department is authorized to rely on final audit findings, taxpayer amended returns or department review, and to certify mine product valuation amendments to the county assessor of the county in which the property is located, to be entered upon the assessment rolls of the county and taxes computed and collected thereon subject to appeal under subsection (g) of this section, provided that the audit or review commences or return is filed within five (5) years from the date the production should have been or was reported pursuant to W.S. 39–2–201(b)(i), whichever is later.
>
> (c) The department is authorized to rely on final audit findings, taxpayer amended returns or department review, and to assess deficient severance tax payments, interest and penalty, if any, for the same periods governing mine product valuation amendments pursuant to subsections (a) and (b) of this section.

(d) All audits or department reviews, as applicable, pursuant to subsections (a), (b) and (c) of this section are subject to the following conditions:

(i) Audits are commenced when the taxpayer receives written notice of the intended action;

(ii) Prior to entering the premises of a taxpayer or third party, the taxpayer or third party shall be provided at least fourteen (14) days written notice;

(iii) Audits are completed when the final findings are issued to the taxpayer by the department of audit;

(iv) Unless otherwise agreed to in writing, audits shall be completed and the final audit findings issued to the taxpayer not later than the end of the month two (2) years after the audit is commenced;

(v) Any assessment or levy, including the assessment of a penalty and interest, if any, resulting from final audit findings or department review shall be issued within one (1) year following the completion of the audit or review;

(vi) Upon receipt of department review findings, the taxpayer shall have sixty (60) days in which to submit a response.

*(e) The taxpayer is entitled to receive an offsetting credit for any overpaid gross product or severance tax identified by an audit that is within the scope of the audit period, without regard to the limitation period for requesting refunds. In calculating interest and penalty, the department or board of county commissioners shall first compute a net deficiency amount after subtracting any offsetting credit and then calculate any interest and penalty due.*

(Emphasis added.) This statute became effective on March 11, 1991. 1991 Wyo.Sess. Laws ch. 257, § 3. Section 2 contains this language:

**Section 2.** W.S. 39-2-214(a) through (d) as created by this act does not limit or affect audits that have been commenced, audit findings that have been issued, or mine product valuation amendments which have been filed with or approved by the state board of equalization or the department prior to the effective date of this act. This act does not prohibit any county from conducting or contracting for future audits or examinations regarding mine product valuation. This act is not intended to be a grant of any additional powers to counties regarding mine product valuations. Any audit or examination which has not commenced as of the effective date of this act, conducted by or contracted for by a county, shall be subject to the provisions of this act.

1991 Wyo.Sess.Laws ch. 257, § 2. Because section 2 does not include subsection (e) in its terms, Texaco contends that the Legislature intended for it to apply retrospectively. The Board, on the other hand, asks that we treat the so-called "desk-reviews" conducted by the contract auditors as being something other than an audit and, thus, avoid the concern with the retroactivity of § 39-2-214 altogether. We choose to decide this case on the basis of retrospective application of the statute, without avoiding that issue as the Board suggests. We conclude that it is unmistakably clear that the Legislature intended for § 39-2-214(e) to apply prospectively only. Reading the statute as a whole, we perceive that the Legislature used language which is unambiguous; it created a more level playing field for taxpayers in only those matters which are clearly within its ambit. *See Meridian Aggregates Company v. Wyoming State Board of Equalization,* 827 P.2d 375 (Wyo. 1992) (citing *Belco Petroleum Corporation v. State Board of Equalization,* 587 P.2d 204 (Wyo.1978)). Not entirely unlike the situation in *Meridian Aggregates Company,* if we were to adopt the retroactive application contended for by Texaco, we would create an inequity for the Department and the Board, as well as the treasury of this state, which the Legislature could not have intended absent a forthright statement to that effect. Texaco has not applied for any refunds, so we do not need to address what effect the statutes pertaining to refunds might have, other than to recognize that those statutes are applicable except to the extent that future proceed-

ings under § 39–2–214 might obviate their applicability. *See Amoco Production Company v. Wyoming State Board of Equalization*, 797 P.2d 552 (Wyo.1990).

 Texaco takes a stab at making an argument sounding in equity; i.e., that, as a matter of equity or fairness, Texaco ought to be able to offset such past overpayments, even though the applicable statutes do not otherwise permit it. Texaco may still have an adequate remedy at law pursuant to § 39–2–214 because an audit of its tax liabilities is presently in process which could reach tax years 1981 and forward. Under such circumstances, this Court will not invoke equity. *Colorado Interstate Gas Company v. Natural Gas Pipeline Company of America*, 842 P.2d 1067, 1072 (Wyo.1992). Texaco also asserts that the root of the problem is the Board's refusal to recognize the difference between a refund and a "credit (recoupment)." Before the enactment of § 39–2–214(e), the statutes provided Texaco with a remedy in the form of a refund. That statute now provides the opportunity for Texaco to receive "offsetting credits" if they arise in proceedings within the ambit of that statute. No need exists in this case for this Court to refine the distinctions between "refund," "credit," and "offset."

Because Texaco has an opportunity to obtain an offsetting credit in an audit which is now ongoing, the cases of *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), and *National Cash Register Co. v. Joseph*, 299 N.Y. 200, 86 N.E.2d 561 (N.Y.Ct.App.1949), are not applicable to the resolution of this case. *See also* 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* § 113 (1965). In brief, the *Bull* case held that withholding a taxpayer's refund amounted to fraud in a suit where the United States sought to impose additional taxes outside the limitations period for applying for a refund and that, where those additional taxes arose out of the same "transaction," not permitting an offset offended "natural justice and equity." *Bull*, 295 U.S. at 261, 55 S.Ct. at 700. The taxpayer in *Bull* was entitled to recoupment even though the limitations period for a refund expired. The *Bull* case has been distinguished, explained, and questioned just short of death. *See, e.g., United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); and *Harman's of Idaho, Inc. v. Idaho State Tax Commission*, 760 P.2d 1156 (Idaho 1988). *Bull* and its progeny may have some residual viability, particularly in federal tax litigation, but we decline to consider it further in this matter. If the "inequity" which Texaco conjured up for this Court's consideration comes to pass, we will give the *Bull* theory more attention at that time.

Affirmed.