**THUNDER BASIN COAL COMPANY,**
Appellant (Petitioner),

v.

**WYOMING STATE BOARD OF
EQUALIZATION,** Appellee
(Respondent).

No. 94–125.

Supreme Court of Wyoming.

June 8, 1995.

Rehearing Denied June 30, 1995.

Alan B. Minier of Rothgerber, Appel, Powers & Johnson, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., and Vicci M. Colgan, Sr. Asst. Atty. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Thunder Basin Coal Company filed a petition in the district court for a review of the findings of fact, conclusions of law, and order which had been issued by Appellee Wyoming State Board of Equalization. The district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

We affirm the State Board of Equalization's decision.

### Issues

Thunder Basin presents the following issues for our review:

Must the final agency action of the Wyoming State Board of Equalization be set aside as contrary to law and otherwise not in accordance with the standards of W.S. § 16-3-114(c), because the Board:

1. Refused to set aside in its entirety a reassessment arising out of an audit that (a) was not intended to ascertain the fair cash market value of [Thunder Basin's] product; (b) disregarded the appraisal judgment exercised by State employees who did the original valuations; (c) was conducted without guidelines and without reference to any recognized audit standards; and (d) was beyond the scope of audits permitted under Wyoming law;

2. Made findings of fact that are unsupported by substantial evidence because they are (1) based on matters outside the record in this case (including matters apparently officially noticed) whose source, if any, the Board refused to disclose; and (2) based on testimony that was not competent[;]

3. Upheld the State's disallowance of certain components of the initial valuations of [Thunder Basin's] coal production, including (a) the disallowance of "calculated profit" for 1987 and (b) the disallowance of haulage costs for 1986;

4. Refused to hear [Thunder Basin's] claims for offset or refund; and

5. Made procedural and evidentiary rulings that deprived [Thunder Basin] of its due process right to adequately prepare and present its case.

### Facts

Thunder Basin operated the Black Thunder and Coal Creek coal mines located in Campbell County. The Department of Audit began an audit in 1989 of Thunder Basin's coal production for the years 1984 through 1988. The 1986 and 1987 production years are the only years at issue in this appeal. For those years, the Department of Revenue employed a net-back valuation formula to

value the coal which had been sold at points other than at the mouths of the mines. The net-back valuation formula is described in *Amax Coal Company v. Wyoming State Board of Equalization*, 819 P.2d 825, 827 n. 4 (Wyo.1991).

The Department of Audit identified a number of errors which had been made in the original valuations of Thunder Basin's coal production. As a result of the audit, the Department of Revenue issued additional severance tax assessments to Thunder Basin and certified increases in the taxable value of Thunder Basin's coal production to Campbell County for ad valorem tax purposes.

Thunder Basin did not agree with the Department of Revenue's determinations and appealed to the State Board of Equalization. The State Board of Equalization held a contested case hearing on Thunder Basin's appeal. During the hearing, the State Board of Equalization refused to admit evidence offered by Thunder Basin with regard to the standard industry rate of return on and of its investment which was used in the net-back valuation formula in 1986 and 1987 or to its actual rate of return on and of its investment. Thunder Basin was allowed to submit a written offer of proof of its evidence on these issues. The State Board of Equalization upheld some of the Department of Revenue's additional assessments. Specifically, the State Board of Equalization affirmed the Department of Revenue's assessments which resulted from a disallowance of a double deduction for Thunder Basin's coal haulage costs for 1986 and a disallowance of a deduction for its "calculated profit" for 1987. Thunder Basin appealed to the district court from the State Board of Equalization's decision, and the district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

### Discussion

When we are reviewing cases which have been certified to us pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the reviewing court of the first instance. *Hepp v. State ex rel. Wyoming Workers' Compensation Division*, 881 P.2d 1076, 1077 (Wyo.1994).

■ We review an administrative agency's findings of fact under the substantial evidence standard:

> "Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions."

*Romero v. Davy McKee Corporation*, 854 P.2d 59, 61 (Wyo.1993) (citing *Farman v. State ex rel. Wyoming Workers' Compensation Division*, 841 P.2d 99, 102 (Wyo. 1992)).

*Bearden v. State ex rel. Wyoming Workers' Compensation Division*, 868 P.2d 268, 269 (Wyo.1994). We do not, however, defer to an agency's conclusions of law. "Instead, if the 'correct rule of law has not been invoked and correctly applied, ... the agency's errors are to be corrected.'" *Thunder Basin Coal Company v. Study*, 866 P.2d 1288, 1291 (Wyo.1994) (quoting *Devous v. Wyoming State Board of Medical Examiners*, 845 P.2d 408, 414 (Wyo.1993)).

Many of the factual and legal issues which have been presented in this case are very similar to those which were presented in *Amax Coal West, Inc. v. Wyoming State Board of Equalization*, 896 P.2d 1329 (Wyo. 1995). We will, therefore, rely extensively upon our rulings in *Amax Coal West, Inc.* in deciding this case.

■ Thunder Basin contends that the State Board of Equalization erred by "refusing to set aside the [Department of Revenue's] reassessment in its entirety as contrary to law" because it did not reflect the fair cash market value of its mine product. As we explained in detail in *Amax Coal West, Inc.*, Wyoming's constitution and statutes require that coal production must be valued for taxation purposes at its fair cash market value at the mouth of the mine. 896 P.2d at 1332. Recognized appraisal techniques must be used to determine the fair cash market value of the coal which is sold away from the

mouth of the mine. All factors which relate to the value of the product must be addressed in the valuation method. The net-back valuation formula is one such appraisal technique. 896 P.2d at 1332–33.

■ Thunder Basin seeks to challenge components of the net-back valuation formula, including the Department of Revenue's use of a standard rate of return instead of Thunder Basin's actual rate of return. The record reveals that Thunder Basin was aware of the Department of Revenue's use of a standard rate of return at the time that the department made its original assessment. Thunder Basin waived its right to challenge the components of the formula when it voluntarily elected not to appeal from the original assessment which was derived from the use of the formula. It, therefore, conceded that the net-back valuation formula was an appropriate appraisal method to be used in determining the fair cash market value of its coal production. Thunder Basin cannot, at this late date, challenge the basic components of the formula when the components were not changed in the audit or revaluation. 896 P.2d at 1332.

■ Since Thunder Basin waived its right to contest the net-back valuation formula, evidence on the origins of the standard rate of return and evidence with regard to Thunder Basin's actual rate of return were irrelevant to the issues properly before the State Board of Equalization at the contested case hearing. The Board correctly refused to hear that evidence and did not err by requiring Thunder Basin to present its offer of proof in written form. 896 P.2d at 1335. Similarly, the State Board of Equalization's findings on the origins of the standard rate of return were not essential to its decision, and we do not need to determine whether or not those findings were supported by substantial evidence. *Id.*

■ The audit revealed errors in the valuation of Thunder Basin's coal production: (1) Thunder Basin was allowed to deduct its haulage cost twice in 1986—once as a transportation cost and again as a processing cost—and (2) Thunder Basin was allowed to take a deduction for its "calculated profit" as a processing cost in addition to receiving a deduction of the standard rate of return on and of its investment which was given to all coal producers in 1987. After the audit, the Department of Revenue disallowed the deduction for Thunder Basin's haulage as a processing cost and refused to give Thunder Basin a deduction for its calculated profit. The Department of Revenue issued additional assessments to reflect those determinations. The State Board of Equalization upheld the additional assessments.

Thunder Basin offers an offset theory, which is similar to the argument presented by Amax, to account for the erroneous deductions. 896 P.2d at 1333. Thunder Basin contends that the Department of Revenue, in a valid exercise of its appraisal judgment, allowed Thunder Basin to take the double deduction for its haulage costs as a substitute for giving it credit for its actual profit in the original 1986 assessment. Thunder Basin's theory is untenable.

Thunder Basin does not direct us to any statutory or regulatory authority which supports the conclusion that it is entitled to have a double deduction for a single cost. Department of Revenue employees did not have the authority, under the guise of appraisal judgment, to give Thunder Basin a deduction which was not warranted by the statutes or rules and regulations. *Fullmer v. Wyoming Employment Security Commission,* 858 P.2d 1122, 1124 (Wyo.1993).

Thunder Basin was allowed to have a deduction in 1987 for its "calculated profit"[1] in addition to having the standard rate of return which was allowed to all coal producers under the net-back valuation formula for that

1. The record is unclear as to what the term "calculated profit" meant. In some instances, Thunder Basin seemed to be describing a number derived from an independent calculation; in other instances, its seemed to be using "calculated profit" synonymously with "actual profit." The precise meaning of the term is immaterial since we know that calculated profit was an amount of profit reported by Thunder Basin which was over and above the return on investment accounted for by the standard rate of return included in the net-back valuation formula in 1987.

year. The State Board of Equalization correctly found that the calculated profit deduction was improper. The Department of Revenue is required to treat all similarly situated taxpayers uniformly and equally. WYO. CONST. art. 15, § 11; *see also Teton Valley Ranch v. State Board of Equalization*, 735 P.2d 107 (Wyo.1987). When the Department of Revenue allowed Thunder Basin to take a deduction for its calculated profit but did not give the same deduction to other taxpayers, it violated its legal directives. The Department of Revenue properly corrected that error after the audit had been conducted by disallowing the calculated profit deduction and by issuing the additional assessment.

■ Thunder Basin argues that the Department of Audit exceeded its authority pursuant to the State Board of Equalization's rules which articulated the relevant audit procedure. RULES AND REGULATIONS, WYOMING STATE BOARD OF EQUALIZATION ch. XXI, § 14 (1986). As we previously decided in *Amax Coal West, Inc.*, the Department of Audit, the Department of Revenue, and the State Board of Equalization acted within the scope of their authorities and responsibilities by discovering and remedying assessment errors. *See Wyoming State Tax Commission v. BHP Petroleum Company Inc.*, 856 P.2d 428, 435–39 (Wyo.1993). The errors detected in the audit were mathematical and reporting errors which could be properly identified by the auditors without the need to consult with appraisal specialists. *Amax Coal West, Inc.*, 896 P.2d at 1335.

■ In its findings of fact, the State Board of Equalization stated that, in its annual reports, Thunder Basin had misled the Department of Revenue. Thunder Basin contends that substantial evidence did not support those findings. After reviewing the record, we cannot agree. Evidence was presented which suggested that Thunder Basin had attempted to manipulate the Department of Revenue in the original assessment so that it would reach a lower valuation determination. Although the double reporting of the haulage

costs and the improper reporting of the calculated profit were easily identified in the audit as being errors, they were errors which Thunder Basin should not have made in its initial reports. The propriety of the reassessment did not depend upon whether or not Thunder Basin was at fault. We understand that Thunder Basin may have been insulted by the State Board of Equalization's findings, but, regardless of whether or not Thunder Basin had attempted to mislead the Department of Revenue, the department was required to correct the errors after the auditors discovered them.

■ Thunder Basin maintains that the State Board of Equalization acted arbitrarily and capriciously by relying on its own expertise in making its decision. In support of its argument, Thunder Basin asserts that the State Board of Equalization officially noticed matters from other proceedings without giving Thunder Basin the opportunity to respond as is required by WYO.STAT. § 16–3–108(d) (1990). Thunder Basin points out that some of the findings of fact in this case were identical to those issued by the State Board of Equalization in other cases. It is true that several of the State Board of Equalization's findings in this case were the same as the findings issued in other cases, but that fact alone does not establish that the board acted in an arbitrary fashion. The other cases were remarkably similar, both factually and legally, to Thunder Basin's case, and the State Board of Equalization did not err by treating similar cases in a consistent manner.[2]

■ Thunder Basin insists that the Board erred by not requiring the Department of Revenue to support its revaluation and reassessment with expert testimony at the contested case hearing. WYO.STAT. § 16–3–108(a) (1990) provides that agency orders must be supported by "the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs." The Department of Revenue presented testimony from Department of Revenue employ-

---

**2.** Thunder Basin seems to argue that the State Board of Equalization improperly officially noticed other matters. Thunder Basin does not, however, identify those matters to us. We can-

not address the alleged errors in the absence of a specific and coherent argument. *McNeiley v. Ayres Jewelry Co.*, 886 P.2d 595, 597 n. 2 (Wyo. 1994).

ees and from Department of Audit employees to support the additional assessment. That evidence was certainly competent, and it was sufficient to support the State Board of Equalization's decision.

Thunder Basin suggests that our decision in *Devous* mandates that expert testimony is required to fulfill the substantial evidence requirement in administrative proceedings. 845 P.2d 408. In that case, we held that expert testimony was required to support the Board of Medical Examiner's decision. 845 P.2d at 418. We have not, however, required that similar expert testimony be given in tax cases. Instead, we have found that substantial evidence supports agencies' findings when proper and sufficient testimony has been presented through qualified employees. *See, e.g., Holly Sugar Corporation v. State Board of Equalization for State of Wyoming,* 839 P.2d 959 (Wyo.1992).

■■■ Thunder Basin contends that the State Board of Equalization erred by not allowing it to present its claim for an offset or refund. The State Board of Equalization's ruling was correct. Thunder Basin's claims were time-barred under the provisions of WYO.STAT. § 39–6–304(g) (1985) (repealed 1988) because Thunder Basin failed to file its refund application within two years of its payment of the taxes. *CIG Exploration, Inc. v. State Department of Revenue,* 880 P.2d 601, 603 (Wyo.1994). Thunder Basin is not entitled to receive an offset or refund pursuant to WYO.STAT. § 39–2–214(e) (1994) because the audit was commenced before the effective date of the statute. *See Texaco, Inc. v. State Board of Equalization,* 845 P.2d 398 (Wyo.1993).

Thunder Basin argues that *Amoco Production Company v. Board of Commissioners of Carbon County,* 876 P.2d 989 (Wyo.1994), and *Kunard v. Enron Oil & Gas Company,* 869 P.2d 132 (Wyo.1994), required the State Board of Equalization to hear its claims. Both of these cases involved situations where the State Board of Equalization had already affirmatively determined that an overassessment had occurred and had reduced the taxpayers' assessed valuations. The controversies in *Amoco Production Company* and *Kunard* arose when the relevant counties re-

fused to refund ad valorem taxes which were paid because of the overvaluations and refused to refund penalty interest charges. Neither of the cases addressed whether or not the State Board of Equalization must consider a claim for refund or offset in the first instance, and, therefore, those cases do not apply in this case. The State Board of Equalization properly refused to hear Thunder Basin's claims because the claims were time-barred under § 39–6–304(g) and the case law which interpreted that section. Thunder Basin argues that, pursuant to *Kunard,* it is entitled to have equitable relief, but it does not present a persuasive argument on its right under the facts of this case. Thunder Basin, therefore, is not entitled to have equitable relief.

■■■ During the discovery phase of this case, Thunder Basin filed a motion to compel the State Board of Equalization to answer Thunder Basin's discovery requests in the district court. The State Board of Equalization's executive secretary entered his appearance in the district court case as the attorney of record for the board. The State Board of Equalization subsequently denied Thunder Basin's motion to preclude the executive secretary from acting as the hearing examiner in the contested case proceeding. Thunder Basin asserts that its due process rights were violated because the State Board of Equalization's ruling denied it the right to have its case considered by an unbiased tribunal.

■■■ "[T]he strictures of due process require a fair hearing before a forum which is free from bias and prejudice." *State Transportation Commission of Wyoming v. Ford,* 844 P.2d 496, 498 (Wyo.1992). Thunder Basin, however, "had the burden to prove impropriety on the part of the hearing body." *Id.* Thunder Basin contends that the executive secretary's repeated rulings in favor of the Department of Revenue and against Thunder Basin denoted bias against it. This Court has stated: "Bias and prejudice cannot be presumed from unfavorable past rulings." *Richardson v. Richardson,* 868 P.2d 259, 263 (Wyo.1994). Thunder Basin has not satisfied

its burden of proving impropriety on the part of the State Board of Equalization.

### Conclusion

The State Board of Equalization did not commit any reversible error. Its findings of fact, conclusions of law, and order are, therefore,

Affirmed.