FOX, Justice.
[¶1] Solvay Chemicals, Inc. (Solvay) appealed the Department of Revenue's (DOR) assessment of the taxable value of soda ash produced at its Sweetwater County trona mine to the Wyoming Board of Equalization (Board). Solvay disputed the calculations the DOR used to determine the amount of the deduction for bagging some of the soda. After the contested case hearing, the Board requested supplemental briefs to address a question of statutory construction that had not been raised by either party, and the Board ultimately decided that the issue was not the amount Solvay was entitled to deduct for bagging costs, but rather, whether it was entitled to any bagging deduction at all. The Board concluded that the issue disputed by *297 the parties throughout the proceeding was moot, reasoning that the governing statute did not allow for a separate deduction for bagging. We decline the parties' request that we decide the issue of statutory interpretation as it applies to bagging cost deductions, because we find that the Board exceeded its authority when it decided an issue that was not before it.
ISSUE
[¶2] One issue raised by the parties is dispositive: Whether the Board acted without observance of the procedure required by law when it based its order on an issue not contested or addressed by either party during the contested case hearing.
FACTS
[¶3] Solvay mines trona ore from its mine in Sweetwater County, Wyoming, and then processes it as soda ash and other products. Solvay sells the majority of its soda ash in bulk, and transports it to the customer by rail or truck. A small amount of Solvay's soda ash is bagged and provided to customers in that form, at a higher charge. Solvay incurs increased costs for the bagging, and it historically deducted those costs from the sales value for tax purposes. Solvay's practice was to report the taxable value of its bagged product based on the bulk product value. But, after an audit of Solvay's 2010-2012 production and tax payments, the Department of Audit (DOA) rejected Solvay's approach and instead arrived at a lower bagging deduction, based on its calculation of Solvay's actual bagging costs. The DOR adopted the DOA's calculations and issued its final determination assessment notice of additional severance tax due, notifying Solvay of an additional $24,524 due in severance taxes, and interest in the amount of $13,160.[1] The DOR did not dispute that Solvay was entitled to a deduction for bagging costs; rather, it used a different calculation for determining the amount of the deduction. Solvay appealed the DOR's final determination to the Board.
[¶4] The primary issue identified in Solvay's Notice of Appeal was "Solvay believes DOR and DOA may not have properly valued a portion of Solvay's trona/soda ash production known as 'bagged product.' " In its Preliminary Statement, Solvay again summarized its contention as "DOR's and DOA's valuation of Solvay's 'bagged product' is erroneous." The DOR agreed, identifying the first issue of fact and law in its Preliminary Statement as "Did the [DOR] correctly value the bagged sales of soda ash in accordance with the law?" The correct valuation of Solvay's deduction for bagging soda ash to determine taxable value continued to be the central issue identified by both parties in their pre-hearing filings, at the hearing, and in the parties' post-hearing briefs and proposed findings of fact and conclusions of law.
[¶5] Nearly five months after the hearing, the Board, in its Order for Supplemental Briefing, signaled that it did not consider the calculation of the deduction for Solvay's bagged product to be the issue; instead, the Board ordered the parties to submit briefs answering its questions on statutory interpretation regarding an entirely different methodology. The Board ordered the parties to submit supplemental briefs on these issues:
1. Are relevant parts of Wyoming Statutes sections 39-14-301 and 303 (2009-2012) ambiguous and, if so, in what respect?
2. Do the provisions in Wyoming Statute section 39-14-303(b) (2009-2012) identify multiple valuation methods, or a single valuation method? If you argue that subsection (b) prescribes one valuation method, please explain and reconcile the remaining subsection (b) provisions in support of your interpretation. If you argue that subsection (b) offers more than one valuation method, please identify and explain the application of those methods and how those differ from, or relate to, subsection (b)(ii).
[¶6] The parties agreed that the statutes were unambiguous, so the first issue was not in dispute. As to the second question, a brief discussion of the statutory interpretation issue is necessary to set the stage.
*298 Wyo. Stat. Ann. § 39-14-303(b) (LexisNexis 2017) provides:
(b) Basis of tax (valuation). The following shall apply:
(i) Trona shall be valued for taxation as provided in this section;
(ii) The department shall calculate the value of trona ore for severance and ad valorem tax purposes by using the individual producer's fair market value of soda ash f.o.b. plant multiplied by the industry factor divided by the individual producer's trona to soda ash ratio less exempt royalties. The industry factor shall be thirty-two and five-tenths percent (32.5%);
(iii) The value of the gross product shall be the fair market value of the product at the mouth of the mine where produced, after the mining or production process is completed;
(iv) Except as otherwise provided, the mining or production process is deemed completed when the mineral product reaches the mouth of the mine. In no event shall the value of the mineral product include any processing functions or operations regardless of where the processing is performed;
(v) Except as otherwise provided, if the product as defined in paragraph (iv) of this subsection is sold at the mouth of the mine, the fair market value shall be deemed to be the price established by bona fide arms-length sale;
(vi) When the taxpayer and department jointly agree that the application of the methods listed in paragraphs (i) through (v) of this subsection does not produce a representative fair market value for the product, a mutually acceptable alternative method may be applied. Not later than October 1 of each year, the department shall report to the joint minerals, business and economic development interim committee and the joint revenue interim committee on any action taken under this paragraph.
[¶7] Section (b)(ii) adopts an "industry factor" test whose objective was to standardize the deductions for all trona companies and simplify what had been complicated calculations by the producers, the DOA, and the DOR. Up until the Board's Order for Supplemental Briefing, Solvay and the DOR had agreed that Solvay was entitled to a deduction for bagging costs under (b)(iv), in addition to the "industry factor" deduction at (b)(ii). The DOR's new position, in response to the Board's Order for Supplemental Briefing, was that Solvay was entitled to no additional deductions for bagging costs under (b)(iv), because "a more reasoned (and legally accurate) approach is to consider any and all incurred bagging expenses to be encompassed within the scope of the 32.5% industry factor" at (b)(ii) (a single valuation method). Solvay continued to argue that section 303(b)(iv) allowed it to deduct the costs of bagging, in addition to the industry factor deduction at 303(b)(ii) (multiple valuation methods), and it urged the Board to order the DOR to apply its approach to calculating those costs. Solvay filed a response brief, in which it strenuously objected to the DOR's new position, as well as to the timing of raising the new approach.
[¶8] The Board heard oral argument on the new issue. Solvay again objected to the substance and the procedure of the DOR's new approach. At that hearing, the Board chairman expressed his concerns about the Board's jurisdiction in light of the DOR's new assessment.
I just know that we don't have jurisdiction if there -- if the parties are no longer disputing from a final action. So at that point -- I mean, I know what the answer is from our perspective. We don't have jurisdiction.
[¶9] The Board apparently resolved those jurisdictional concerns to its satisfaction, and in its Findings of Fact, Conclusions of Law, Decision and Order, it concluded that Solvay was not entitled to any deduction for bagging soda ash, and it held that the parties' dispute "over how to calculate an additional processing deduction ... is moot in light of our determination that the [DOR] and Solvay initially misinterpreted the underlying valuation methodology." It ordered that the DOR's audit assessment was "reversed and remanded to the [DOR] for reassessment in *299 accordance with" its decision. (Emphasis omitted.)
[¶10] Solvay timely petitioned for review of the Board's action, the district court granted the parties' joint motion to certify the case to the Wyoming Supreme Court, and this Court accepted the certified case pursuant to W.R.A.P. 12.09.
DISCUSSION
[¶11] Judicial review of administrative actions is generally governed by Wyo. Stat. Ann. § 16-3-114(c), but "[w]hether a court or agency has jurisdiction to decide a particular matter is a question of law, subject to de novo review." Exxon Mobil Corp. v. Wyo. Dep't of Revenue , 2011 WY 161, ¶ 24, 266 P.3d 944, 951 (Wyo. 2011) (citing Dir. of the Office of State Lands & Invs., Bd. of Land Comm'rs v. Merbanco, Inc. , 2003 WY 73, ¶ 7, 70 P.3d 241, 246 (Wyo. 2003) ).
[¶12] The Board of Equalization is created by the Wyoming Constitution, which requires the legislature to "provide by law for a state board of equalization," Wyo. Const. art. 15, § 9, and describes the Board's duties as "to equalize valuation on all property ... and such other duties as may be prescribed by law." Wyo. Const. art. 15, § 10. Historically, the Board performed valuation functions, but in 1991, the legislature separated the Department of Revenue and Taxation from the Board and assigned "the valuation of property for tax assessment" to the DOR instead of the Board. Union Pac. Res. Co. v. State Bd. of Equalization , 895 P.2d 464, 466 (Wyo. 1995) ( UPRC II ). The Board "became an independent quasi-judicial organization with constitutional and statutory duties to equalize valuation and decide disagreements regarding statutory provisions affecting the assessment, levy and collection of taxes." Id. (quoting Union Pac. Res. Co. v. State , 839 P.2d 356, 363 (Wyo. 1992) ( UPRC I ) ).
[¶13] Although the Board is a quasi-judicial body, the DOR's contention that "the Board should be treated in the same manner as any other judicial body when construing statutes affecting the assessment, levy and collection of taxes" is incorrect. The Board is not, in fact, like any other judicial body; rather, it is a creature of the legislature. "An administrative agency is limited in authority to powers legislatively delegated. Administrative agencies are creatures of statute and their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim." Exxon Mobil Corp , 2011 WY 161, ¶ 24, 266 P.3d at 951 (quoting Amoco Prod. Co. v. Wyo. State Bd. of Equalization , 12 P.3d 668, 673 (Wyo. 2000) ( Amoco III ) (citations omitted) ). "A corollary of the rule is that, when a statute provides a particular manner in which a power may be executed, the agency may not exercise its power in a different way. Any action taken by an agency without authority is ultra vires and void." Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen. , 2009 WY 143, ¶ 30, 221 P.3d 306, 316 (Wyo. 2009) (citations omitted). See also Nancy D. Freudenthal & Roger C. Fransen, Administrative Law: Rulemaking and Contested Case Practice in Wyoming , 31 Land & Water L. Rev. 685, 687 (1996). A series of cases delineating the Board's adjudicatory authority illustrate this point.
[¶14] In UPRC II , UPRC petitioned the Board to declare the point of valuation to determine taxable value for oil and gas production, and the Board declined to exercise jurisdiction. 895 P.2d at 465. At the time, the DOR was still considering changes to valuation for the tax years in question. Id. at 466. The court affirmed the Board's decision, holding that "it would be infringing upon the administrative function specifically assigned to the [DOR] if it offered the relief claimed by UPRC." Id. at 467. The court there rejected UPRC's argument that the language of Wyo. Stat. Ann. § 39-1-304(a)(iv) provided the Board with broad authority to " '[d]ecide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes.' " Id. at 467 n.1, 468.
[¶15] The court reminded the Board of the limitations on its authority in Basin Electric Power Cooperative, Inc. v. Department of Revenue , 970 P.2d 841 (Wyo. 1998). There, the parties settled an appeal of the DOR's electric utility appraisal. The Board then entered *300 an Order Initiating Review of the DOR's "assessment practices, methodology, formulas or systems." Id. at 846. The Board issued a report, concluding that the DOR's valuations of one electric company were erroneous. Id . The DOR then changed its appraisal methods in accordance with the Board's report. Id. at 847. The court held that the Board exceeded its authority when it sua sponte determined that the DOR's tax methodology was incorrect. "The fundamental flaw in the Board's action is that it failed to acknowledge that its authority is limited to the adjudication of taxation issues and rulemaking." Id. at 849. The court noted that the legislature "is clear in its mandate that the Board and the [DOR] have separate and distinct duties." Id . The Board has two functions-to hear contested cases on tax appeals and to promulgate rules and regulations. "Any other exercise of authority violates the clear intent of the legislature." Id.
[¶16] In Antelope Valley Improvement and Service District v. State Board of Equalization , 4 P.3d 876 (Wyo. 2000), we further clarified the distinction between the Board's regulatory and adjudicatory functions, and the limits to the Board's actions in its adjudicatory role. We emphasized the Board's "separate and distinct role as an appellate body," id. at 877, holding that when the Board functioned in its adjudicatory capacity, "it is not a proper party to an appeal" of its decisions. Id. at 878. The court recognized that the Board, when acting in its regulatory capacity, would be a proper respondent in an appeal, but it rejected the Board's argument that "its statutory and constitutional duty to equalize taxation throughout the state" gave it an interest in the appeal of the decisions it makes in its adjudicatory capacity. Id .
[¶17] In Amoco III , the court considered the limits of the Board's authority in the context of a decision it made in its adjudicatory capacity. Amoco appealed the DOR's determination of the amount it owed for taxes, interest, and penalties on natural gas production. Id ., 12 P.3d at 671. After a contested case hearing, the Board ordered the parties to submit additional briefing with their calculations for tax, interest, and penalties. Id . Amoco and the DOR had agreed that actual costs of production should be relied on instead of a twenty-five percent allowance; they only disputed which costs should be utilized. Id. at 673. "Instead of adjudicating the dispute between Amoco and the Department, however, the Board ... determined to arrive at its own valuation ." Id. (emphasis added). The court held:
It is only by either approving the determination of the Department, or by disapproving the determination and remanding the matter to the Department, that the issues brought before the Board for review can be resolved successfully without invading the statutory prerogatives of the Department.
Id. at 674. We have adhered to the distinction in subsequent cases. See Amoco Prod. Co. v. Dep't of Revenue , 2004 WY 89, ¶ 22, 94 P.3d 430, 439 (Wyo. 2004) ("The legislature has developed a framework in which valuation is the unique function of the [DOR]."); see also Wyo. Dep't of Revenue v. Qwest Corp. , 2011 WY 146, ¶ 22, 263 P.3d 622, 629 (Wyo. 2011) (quoting Amoco III , 12 P.3d at 674 ). Amoco III and its progeny are indistinguishable from this case.
[¶18] Here, Solvay and the DOR agreed that bagging costs should be deducted pursuant to Wyo. Stat. Ann. § 39-14-303(b)(iv) ; they only disagreed on the calculation of those costs. The DOR issued its final determination assessment notice (Final Determination), and Solvay timely appealed that Final Determination, pursuant to Chapter 2 of the Board's rules (procedure for contested cases). Both parties identified the issue before the Board as the valuation of bagged soda ash, including in their proposed findings of fact and conclusions of law after the contested case hearing. Rather than approving the determination of the DOR, or disapproving it and remanding the matter back to the DOR, the Board decided that the methodology, upon which there had been no disagreement between the parties, was actually what needed to be corrected, and that Solvay was not entitled to any bagging cost deduction at all.
[¶19] Just as in Amoco III ,
[Solvay] correctly argues that this case was before the Board for a decision on *301 whether certain deductions were or were not allowable. We have no occasion to divest the Board of its prerogatives in the resolution of that question, but we do hold that the Board must decide the question before it in accordance with applicable law. It must refrain from usurping the valuation function assigned to the [DOR], even if the [DOR] should acquiesce.
12 P.3d at 674.
[¶20] The Board here recognized that "the [DOR] could not, after the hearing, supplant, negate or materially modify the audit assessment with an alternative decision to be applied in the present appeal." The only way for the DOR to change the decision appealed would have been for it "to withdraw its audit assessment and issue a revised assessment, or otherwise obtain Solvay's consent to such change."[2] The Board went on to find, however, that it was not bound by the DOR's and Solvay's agreement on a valuation methodology, because the Board is "an independent quasi-judicial body that '[d]ecide[s] all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes, in accordance with the rules, regulations, orders and instructions prescribed by the [DOR].' " Wyo. Stat. Ann. § 39-11-102.1(c)(iv) (LexisNexis 2017).
[¶21] The DOR also relies on the "decide all questions" language at Wyo. Stat. Ann. § 39-11-102.1(c)(iv) to claim that the Board has broad authority when acting in its adjudicatory capacity. That reliance is misplaced. As the court held in Exxon Corp. v. Board of County Commissioners, Sublette County , 987 P.2d 158, 163 (Wyo. 1999), construing the predecessor to § 39-11-102.1(c), the statute separately addresses the Board's adjudicatory and regulatory functions. In Exxon Corp. , Sublette County challenged Exxon's production valuation under Wyo. Stat. Ann. § 39-1-304(a)(xiv) (repealed, 1998 Wyo. Sess. Laws ch. 5, § 4), which provided:
(a) The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization and review final decisions of the department upon application of any interested person adversely affected, including boards of county commissioners for the purposes of this subsection, under the contested case procedures of the Wyoming Administrative Procedure Act. ... In addition, the board shall :
(xiv) Carefully examine into all cases wherein it is alleged that property subject to taxation has not been assessed or has been fraudulently, improperly, or unequally assessed, or the law in any manner evaded or violated, and cause to be instituted proceedings which will remedy improper or negligent administration of the tax laws of the state[.]
987 P.2d at 163 (emphasis in original). Exxon argued that Sublette County had missed the time to appeal the valuation certification for the years at issue, and should not be permitted to use Section 14 to bypass the contested case time limitations. Id. The court rejected that argument, holding that subsection (a) was "part of the Board's adjudicatory function, i.e. , that subsection gives the Board the power to hear appeals. [Section 14], on the other hand, is more closely aligned with the Board's regulatory function." Id. The court explained that the Section 14 procedure did not fall under the Board's rules governing contested cases (Rules of Practice and Procedure Before the Wyoming State Board of Equalization, ch. 2, § 5(a) ), but rather under Chapter 4 (Board Examination Procedures, Ad Valorem Tax), and therefore the 30-day time limit for appeals did not govern. Id. , 987 P.2d at 163-64. See also In re Bd. of Cty. Comm'rs, Sublette Cty. , 2001 WY 91, ¶ 15, 33 P.3d 107, 113 (Wyo. 2001).
[¶22] Section 14 is not at issue in the present case (it now appears as Wyo. Stat. Ann. § 39-11-102.1(c)(x) (LexisNexis 2017) ), but the same distinction between the Board's adjudicatory function described in the introductory paragraph, and the regulatory function described in most of the following subparagraphs, applies here. The "[d]ecide all *302 questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes" language applies to the Board's regulatory function, and cannot serve to expand its authority when acting in its adjudicatory capacity.
[¶23] The relevant language of Wyo. Stat. Ann. § 39-11-102.1(c), now relied on by the DOR and the Board as authority to decide matters beyond the DOR's valuation decision appealed by Solvay, tracks the language of § 39-1-304(a) (repealed, 1998 Wyo. Sess. Laws ch. 5, § 4). It states:
(c) The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization and review final decisions of the department upon application of any interested person adversely affected ... under the contested case procedures of the Wyoming Administrative Procedure Act. ... In addition, the board shall :
....
(iii) When in the opinion of the board, it would be of assistance in equalizing values under paragraph (ii) of this subsection, the board may require any county assessor to furnish statements showing assessments of the property of any person within the county. The board shall consider and equalize county assessments under paragraph (ii) of this subsection and may increase or decrease assessments returned by the county board of equalization when the property so assessed appears to be over-valued or under-valued, first giving notice to those persons affected. The notice shall fix a time and place of hearing. Any affected person may appeal from the decision of the board to the district court of the county in which the property is situated .
(iv) Decide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes, in accordance with the rules, regulations, orders and instructions prescribed by the department:
(A) Upon application of any person adversely affected ; or
(B) In performing its responsibilities to equalize values, including with respect to the suitability of the system prescribed by the department for establishing fair market value.
(Emphasis added.)
[¶24] We find, as the court did in Exxon , 987 P.2d 158, that the Board's adjudicatory functions are described in the initial paragraph of subsection (c). Subsections (c)(iii) and (iv) are directed to the Board's regulatory function to equalize values.[3] The right of an affected person to appeal, referenced in subsections (c)(iii) and (iv), clearly pertains to a right to appeal the Board's regulatory equalization decision. Subsection (c)(iv), like subsection (a)(xiv) in Exxon , 987 P.2d 158, is more closely aligned with the Board's regulatory function-here, in performing its duty to equalize values. See Gen. Chem. Corp. v. Wyo. State Bd. of Equalization , 819 P.2d 418, 421 (Wyo. 1991) (appeal of Board's determination setting the amount of exemption, acting in its regulatory capacity under Wyo. Stat. Ann. § 39-1-304(c)(iv) (now § 39-11-102.1(c)(iv) ) ). The language of Wyo. Stat. Ann. § 39-11-102.1(c)(iv), authorizing the Board to "[d]ecide all questions that may arise with reference to the construction of any statute affecting ... taxes," applies to its regulatory function, and cannot be used to extend the Board's authority in its adjudicatory capacity.
[¶25] In addition, the "[d]ecide all questions language" at (c)(iv) is only triggered either upon application of any person adversely affected, or in performing equalization functions. Neither of those prerequisites exists here. The Board was not performing equalization functions, and there was no application by a person adversely affected to *303 decide the question that the Board ultimately decided. Solvay was the person adversely affected, and it never sought the Board's construction of the statute to determine whether it was entitled to a bagging deduction at all; it only requested a contested case hearing to challenge the DOR's valuation of its bagging deduction. The Board's authority was limited to adjudicating the dispute between Solvay and the DOR. Amoco III , 12 P.3d at 673.
[¶26] In its zeal to correct what it saw as an incorrect application of the law, the Board abandoned the established procedural rules in tax appeals.
With regard specifically to valuations of property by DOR for purposes of taxation, we have recently noted:
The Department's valuations for state-assessed property are presumed valid, accurate, and correct. This presumption can only be overcome by credible evidence to the contrary. In the absence of evidence to the contrary, we presume that the officials charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both.
The petitioner has the initial burden to present sufficient credible evidence to overcome the presumption, and a mere difference of opinion as to value is not sufficient. If the petitioner successfully overcomes the presumption, then the Board is required to equally weigh the evidence of all parties and measure it against the appropriate burden of proof. Once the presumption is successfully overcome, the burden of going forward shifts to the DOR to defend its valuation. The petitioner, however, by challenging the valuation, bears the ultimate burden of persuasion to prove by a preponderance of the evidence that the valuation was not derived in accordance with the required constitutional and statutory requirements for valuing state-assessed property.
Moreover, in examining the propriety of the valuation method, our task is not to determine which of the various appraisal methods is best or most accurately estimates fair market value; rather, it is to determine whether substantial evidence exists to support usage of the chosen method of appraisal.
Airtouch Commc'ns, Inc. v. Dep't of Revenue , 2003 WY 114, ¶ 12, 76 P.3d 342, 348 (Wyo. 2003) (quoting Colo. Interstate Gas Co. v. Wyo. Dep't of Revenue , 2001 WY 34, ¶¶ 9-11, 20 P.3d 528, 531 (Wyo. 2001) (citations omitted) ). The Board ignored the presumption that the DOR's valuation was valid, accurate, and correct; it ignored its duty to weigh the evidence presented by the parties and determine if they had met their respective burdens; and it ignored its task to determine whether there was sufficient evidence to support the chosen method of appraisal.[4] In exceeding its role as a quasi-judicial body to decide appeals of the DOR's final determination, and making its decision on an issue not raised by either the taxpayer or the DOR, the Board acted outside its authority and without observance of the procedure required by law.[5]
[¶27] The Board's authority is limited to "review[ing] final decisions of the [DOR] upon application of any person adversely affected." Wyo. Stat. Ann. § 39-11-102.1(c). On remand, the Board must review the final decision made by the DOR and adjudicate the dispute between DOR and Solvay regarding the valuation of the bagging deduction. In *304 the posture of this contested case, the Board is not authorized to decide a wholly different question than the one presented in the aggrieved party's appeal.
CONCLUSION
[¶28] The Board had the authority to adjudicate the dispute between Solvay and the DOR, and not to arrive at its own valuation by questioning the statutory approach the parties had agreed upon. We therefore reverse the decision of the Board, and remand for proceedings in accordance with this opinion.
[¶29] I disagree with the majority that the Wyoming Board of Equalization (Board) exceeded its authority when it interpreted Wyo. Stat. Ann. § 39-14-303(b) (Lexis Nexis 2017) to disallow Solvay Chemicals, Inc. (Solvay) a separate bagging cost deduction. For the reasons stated below, I would accept the parties' request that we decide the issue of statutory interpretation as it applies to bagging cost deductions.
[¶30] The majority framed the dispositive issue as one raised by the parties: "Whether the Board acted without observance of the procedure required by law when it based its order on an issue not contested or addressed by either party during the contested case hearing." (Emphasis added.) The majority held, however, that the "Board exceeded its authority when it decided an issue that was not before it." Notably, neither Solvay nor the Department of Revenue (DOR) argued or even hinted that the Board had exceeded its statutory authority by prompting a closer examination of how the legislature intended the statutory valuation provisions in Wyo. Stat. Ann. § 39-14-303(b)(ii) (industry factor) and (b)(iv) (processing deductions) to apply in this case. This is because, as explained below, the Board not only had the authority to interpret the trona valuation statutes, it had a duty to do so.
I. Statutory Construction Issue Properly Before the Board Even Under the Majority's Reading of the Statute
[¶31] The Board often is tasked with interpreting tax valuation statutes in both adjudicatory[6] and regulatory[7] contexts. Although the majority appears to recognize some Board authority to interpret valuation statutes in the adjudicatory context, the majority reads Wyo. Stat. Ann. § 39-11-102(c)(iv)(A) (Lexis Nexis 2017) to limit the Board's interpretative authority to only those cases in which a question of statutory interpretation is raised "upon application of any person adversely affected."[8] Solvay did not identify a *305 specific statutory interpretation question in the contested case proceeding.[9] The proper interpretation of Wyo. Stat. Ann. § 39-14-303(b) is integral, however, to resolving the issue Solvay did raise before the Board (i.e., whether the DOR and the Department of Audit (DOA) properly valued the bagged product). I believe that in appealing "all aspects of DOR's and DOA's valuation" and asking the Board to review whether the agencies "may not have properly valued" the bagged product, Solvay triggered the "decide all questions" language in Wyo. Stat. Ann. § 39-11-102.1(c)(iv), thus satisfying the majority's test for when the Board has authority to interpret Wyo. Stat. Ann. § 39-14-303(b) in its adjudicatory capacity.
[¶32] After the close of evidence, the Board identified specific statutory interpretation questions to be answered before it could apply the statute to the evidence presented. The Board requested that the parties brief the following, summarized issues: (1) whether relevant parts of trona valuation statutes, Wyo. Stat. Ann. §§ 39-14-301 and -303 are ambiguous;[10] and (2) whether Wyo. Stat. Ann. § 39-14-303(b) identifies multiple valuation methods, or a single valuation method, and if it identifies more than one method, how do those methods apply or relate to -303(b)(ii), the industry factor deduction provision. The Board ultimately decided the case based on its legal, not factual, conclusion that the trona valuation statute identifies multiple valuation methods and does not allow a bagging cost deduction separate from the industry factor deduction.[11] Such legal determination was required to avoid sanctioning an impermissible deduction. See, e.g. , Thunder Basin Coal Co. v. Wyo. State Bd. of Equalization , 896 P.2d 1336, 1339 (Wyo. 1995) (citing Fullmer v. Wyo. Emp't Sec. Comm'n , 858 P.2d 1122, 1124 (Wyo. 1993) ) ("Department of Revenue employees did not have the authority, under the guise of appraisal judgment, to give Thunder Basin a deduction which was not warranted by the statutes or rules and regulations."). Thus, I believe the issue was properly before the Board and necessarily decided.
*306 II. Alternatively, the Majority's Reading of the Statute Improperly Limits Board's Authority
[¶33] To the extent the majority's test for when the Board has authority to interpret Wyo. Stat. Ann. § 39-14-303(b) in its adjudicatory capacity is even stricter than described above and requires any statutory interpretation issue to be articulated with precision in an adversely affected person's appeal to the Board, the majority's limitation on the Board's power contradicts clear statutory language and purpose, violates established administrative law principles, and discounts important practical considerations. In determining whether the legislature vested the Board with authority to interpret Wyo. Stat. Ann. § 39-14-303(b) in this case, we must consider: (1) the statutory language of Wyo. Stat. Ann. § 39-11-102.1(c), without resorting to subtle and forced construction to limit its operation; (2) the purpose of that provision pertaining to the function of and duties imposed on the Board; and (3) practical considerations. See Bd. of Comm'rs of Weston Cty. , 20 Wyo. 259, 123 P. 72, 74 (1912) ; Sheridan Cty. Comm'n v. V.O. Gold Props., LLC , 2011 WY 16, ¶ 15, 247 P.3d 48, 53 (Wyo. 2011) ; see also Roberts Dairy v. Billick , 861 N.W.2d 814, 817 (Iowa 2015). My conclusion the Board is vested with interpretation authority is consistent with the statute, our precedent, and is supported by important practical considerations.
A. Wyo. Stat. Ann. § 39-11-102.1(c)
[¶34] In listing the Board's primary constitutional and statutory duties, the legislature mandates that the Board shall review "final decisions of the [DOR] upon application of any interested person adversely affected." Wyo. Stat. Ann. § 39-11-102.1(c). Then, in prescribing more specific duties, the text provides: "In addition, the [B]oard shall ... [d]ecide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes, in accordance with the rules, regulations, orders and instructions prescribed by" the DOR, "[u]pon application of any person adversely affected." Wyo. Stat. Ann. § 39-11-102.1(c)(iv)(A) (emphasis added). I read this statutory delegation of authority, consistent with established administrative law principles, as mandating the Board to interpret Wyo. Stat. Ann. § 39-14-303(b) as necessary to adjudicate the valuation issue Solvay raised in its appeal of the DOR's decision.
[¶35] It is axiomatic that an administrative agency, including a quasi-judicial administrative body like the Board, is generally clothed with the power and duty to interpret the statutes it executes, not just through rulemaking, but also through the exercise of its adjudicative powers.[12] 2 Am. Jur. 2d Administrative Law §§ 67, 71 (Aug. 2018 update) (General Power of Agency; Methods of Interpretation); United States v. Mead Corp. , 533 U.S. 218, 227, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001) (citations omitted). The plain language of Wyo. Stat. Ann. § 39-11-102.1(c)(iv) memorializes this axiom.
[¶36] The majority's conclusion that -102.1(c)(iv) "is more closely aligned" with the Board's regulatory duty to equalize values and that "[s]ubsections (c)(iii) and (iv) are directed to the Board's regulatory function to equalize values," is unsupported by statutory language and structure. Wyo. Stat. Ann. § 39-11-102.1(c)(i) through (xvi) are neither as clearly distinguished or as neatly aligned to regulatory or adjudicatory responsibilities as the majority suggests. After generally describing the Board's equalization and appellate, or adjudicatory, functions in the introductory portion of Wyo. Stat. Ann. § 39-11-102.1(c), the legislature assigned specific additional duties to the Board in -102.1(c)(i) through (c)(xvi) in no particular order or arrangement. Sometimes those subsections segregate and sometimes they combine the Board's internal administration, equalization, adjudicatory, enforcement, and rulemaking responsibilities. For example, Wyo. Stat. Ann. § 39-11-102.1(c)(i) addresses the Board's administrative and practice and procedure *307 rulemaking authority. Subsections -102.1(c)(ii) and (c)(iii) address the Board's equalization function. But then -102.1(c)(iv), which authorizes the Board to decide all questions of statutory construction, applies such authority specifically to the Board's performance of "its responsibilities to equalize values" in -102.1(c)(iv)(B), but imposes no similar specific limitation to equalization responsibilities in -102.1(c)(iv)(A), which instead, in the disjunctive, simply references the Board's adjudicatory function to review the application of any person adversely affected. Wyo. Stat. Ann. § 102.1(c)(iv)(A) nowhere states or suggests that the application that triggers the Board's adjudicatory duties must relate to a regulatory matter or must expressly reference a statutory interpretation issue as a prerequisite to the Board considering such interpretation issue.
[¶37] Moreover, the "may arise" language found in -102.1(c)(iv) modifies "questions ... with reference to the construction of any statute affecting the assessment, levy and collection of taxes," not the context (adjudicatory -102.1(c)(iv)(A) or regulatory -102.1(c)(iv)(B) ) in which the question comes to the Board. The phrase "may arise" therefore cannot support the specificity requirement in the majority's conclusion that "there was no application by a person adversely affected to decide the question that the Board ultimately decided." Consequently, the Board did not impermissibly expand its adjudicatory authority when it concluded Solvay was entitled to the industry factor under Wyo. Stat. Ann. § 39-14-303(b)(ii), but not entitled to a separate bagging cost deduction under -303(b)(iv).
[¶38] Considering the scope and arrangement of the remaining subsections of Wyo. Stat. Ann. § 39-11-102.1(c), subsections (c)(vi) and (c)(xv) address both equalization and adjudication. Subsection -102.1(c)(viii) addresses adjudication in contested case hearings under the Wyoming Administrative Procedure Act. Subsections -102.1(c)(ix) through (c)(xiv) address administrative, equalization, and enforcement responsibilities, and -102.1(c)(xv) provides the Board with subpoena power in each of the adjudication, enforcement, and equalization contexts. Finally, -102.1(c)(xvi) specifically authorizes the Board to promulgate rules "governing procedures for board proceedings, including those related to its responsibility to equalize values, and its own internal affairs." Given the integrated nature of the additional Board duties listed in Wyo. Stat. Ann. § 39-11-102.1(c)(i)-(xvi), it cannot be said that -102.1(c)(iv) is more closely aligned with the Board's regulatory duty to equalize values and thus the Board may only exercise its statutory authority to decide all questions of statutory construction when performing a regulatory function to equalize values. The majority has resorted to a subtle and forced construction to limit the operation of -102.1(c)(iv)[13] and thus defeated its intended purpose to provide the Board with the power to interpret the statutes it must enforce. The Board's authority under -102.1(c)(iv) to construe the trona tax valuation statutes clearly extends to its adjudicatory review of DOR decisions.
[¶39] Our precedent is not to the contrary. For example, in Union Pacific Resources Company v. State Board of Equalization , 895 P.2d 464, 465-68 (Wyo. 1995), the Court agreed with the Board that the taxpayer was advocating the use of -102.1(c)(iv)'s predecessor, Wyo. Stat. Ann. § 39-1-304(a)(iv) (repealed, *308 1998 Wyo. Sess. Laws ch. 5 § 4), to permit the Board to determine the point of valuation for oil and gas production-a determination legislatively delegated to the DOR and which the taxpayer could not avoid by presenting to the Board in the first instance. The same cannot be said of the dispositive statutory construction issue in this case: Does Wyo. Stat. Ann. § 39-14-303(b)(iv) afford Solvay a separate bagging cost deduction or not? Once that threshold legal issue is resolved, the valuation of Solvay's trona production lies securely within the DOR's province.
[¶40] Similarly, the Board's statutory construction in this case is easily distinguished from the Board's unauthorized, investigative factfinding into the DOR's methods of appraising rural electric cooperative utilities struck down in Basin Electric Power Cooperative, Inc. v. Department of Revenue , 970 P.2d 841 (Wyo. 1998). Here the Board did not question the DOR's appraisal methods or deduction calculations. Rather, the Board undertook to answer a threshold question of law related solely to whether the legislature intended to afford a bagging cost deduction in addition to the industry factor deduction.
[¶41] The dispositive statutory construction issue in this case also is easily distinguished from the holding in Antelope Valley Improvement and Service District v. State Board of Equalization , 4 P.3d 876, 878 (Wyo. 2000), where we held that the Board, "is not a proper party to an appeal" of its decisions when it has functioned as an appellate body. Solvay asked us to review the Board's appellate decision in this case; the Board acknowledged its appellate role and has asserted no interest as a respondent in this appeal. The holding in Antelope Valley therefore does not apply.
[¶42] Nor do the limitations on the Board's authority discussed in Amoco Production Company v. Wyoming State Board of Equalization , 12 P.3d 668 (Wyo. 2000) ( Amoco III ), apply in this case. As illustrated below, in Amoco III the deductibility of certain processing costs was a question of fact; here, whether the statute allows a separate bagging cost deduction is a question of law.
[¶43] In Amoco III , we looked at whether the Board invaded the DOR's statutory authority, id. at 672-74, not whether the Board is statutorily authorized to interpret valuation statutes in the first instance. We concluded in Amoco III that the Board failed to act in accordance with law when it departed from its appellate review of the DOR's decision by arriving at its own valuation methodology. Id. at 673. The DOR and Amoco had agreed that the "actual costs" methodology should be used to determine Amoco's processing cost allowance, but they did not agree on what costs to use in the formula. Id. at 673. Rather than giving appropriate deference to the DOR's methodology and deciding which party used the right costs, the Board ruled that Amoco must use the "hypothetical twenty-five percent processing cost allowance" methodology. Id. at 672. It was in that specific context that we concluded the Board had usurped the valuation function of the DOR. Id. at 674. Otherwise, we were careful in Amoco III not to divest the Board of its prerogatives in the resolution of issues relating to allowable deductions, so long as the Board's decision is "in accordance with applicable law." Id.
[¶44] Amoco III would govern this case if the Board had preferred Solvay's "bulk product" methodology or fashioned a bagging cost deduction methodology of its own rather than considering the DOR's "actual cost" methodology presumptively valid, see infra n.14. But that is not what happened here. Instead of second-guessing the DOR's bagging cost deduction methodology or choosing another methodology, the Board turned to the governing statute and ruled that the legislature did not intend to provide Solvay a separate bagging cost deduction at all. The Board's disapproval of the DOR's assessment to the extent it allowed any separate processing deduction for bagging costs, and its order remanding the assessment to the DOR, is entirely consistent with Amoco III and is in accordance with applicable law. We must apply language from Amoco III and other cited cases in the context of the specific issues considered and decided in each case. To confuse the boundaries of the Board's statutory authority recognized in those cases with the Board's duty and authority to interpret the *309 trona valuation statutes does an injustice to the Board and to Wyoming administrative law.[14]
[¶45] An administrative agency, including a quasi-judicial administrative body like the Board, is bound to follow its governing statutes. Thunder Basin Coal Co. , 896 P.2d at 1339 (citing Fullmer , 858 P.2d at 1124 ). Accordingly, if the legislature did not intend to provide a separate bagging cost deduction under Wyo. Stat. Ann § 39-14-303(b)(iv), the DOR cannot give Solvay a bagging cost deduction. Nor may the Board or this Court afford the DOR any deference in its decision to allow such a deduction. Thunder Basin Coal Co. , 896 P.2d at 1339 ; see also In re Discipline of Cook , 2007 WY 178, ¶ 9, 170 P.3d 122, 124 (Wyo. 2007) (citing Caldwell v. Cummings , 2001 WY 106, ¶ 11, 33 P.3d 1138, 1142 (Wyo. 2001) ). To the extent the majority holds the Board is prohibited from engaging in statutory interpretation unless the precise issue of interpretation is raised by the parties, it has never been held that an incorrect interpretation can make into law that which never was law.
B. Practical Considerations
[¶46] The key consideration is: Why would this Court force a construction of Wyo. Stat. Ann. § 39-11-102.1(c) to restrict the Board's statutory construction authority where, as here, the Board serves an appellate function,[15] has authority to review the DOR's decision de novo,[16] identifies a threshold question of statutory interpretation, is obligated to execute the trona valuation statutes in the manner the legislature intended,[17] has relevant expertise with regard to the meaning and execution of those statutes, and is still subject to judicial review?
[¶47] Courts and agency bodies with appellate functions have the power to review matters not raised below, though they may choose to exercise such power sparingly. See , e.g. , MaineGeneral Med. Ctr. v. Shalala , 205 F.3d 493, 500 (1st Cir. 2000) (citations omitted); 2 Am. Jur. 2d Administrative Law § 350 (Aug. 2018 update). There are good reasons why the relation between the Board as an appellate body and the DOR as a factfinding body should be at least as flexible as that between the Court and the Board. Most notably, allowing the Board to consider a dispositive interpretation issue in the first instance furthers the purposes of utilizing agency expertise and promoting judicial efficiency, with little risk. Just as the Board affords no deference to the DOR with regard to an erroneous statement of the law, neither will this Court defer to the Board if it errs in stating the rule of law. If the Board's conclusion that Wyo. Stat. Ann. § 39-14-303(b)(iv) does not allow a separate bagging cost deduction is incorrect, we must correct it. See Union Pac. R.R. Co. v. Wy. State Bd. of Equalization , 802 P.2d 856, 860-61 (Wyo. 1990).
[¶48] If, as the majority concludes, the Board is prohibited from construing tax valuation statutes when adjudicating appeals from DOR decisions, "persons adversely affected" may avoid raising those statutory issues in their notices and pleadings on which they do not believe they will prevail. Under the majority's view, unless the parties noticed and pled a disputed statutory construction issue with particularity, the Board would have to perpetuate an incorrect statutory interpretation until reversed on judicial review or by regulatory action.
*310 [¶49] In addition, the majority opinion could encourage parties to file original court actions to resolve statutory interpretation questions; whereas, in the past, the Board has repeatedly and properly applied Wyo. Stat. Ann. § 39-11-102.1(c)(iv) in its appellate function and often successfully resolved contested cases without requiring judicial review. See , e.g. , FMC I and FMC II (interpreting Wyo. Stat. Ann. § 39-14-303(b) without further appeal by the parties). Here again, the resulting inefficiencies seem to greatly exceed any risk.
CONCLUSION
[¶50] For all the foregoing reasons, I conclude the Board did not exceed its authority when it interpreted Wyo. Stat. Ann. § 39-14-303(b) to disallow Solvay a separate bagging cost deduction. This Court should review that interpretation and consider the merits of this case as the parties requested.

This was based on a finding of increased taxable value of $613,086 for the period.

The DOR's attorney conceded at oral argument that this was not a desirable option because the DOR may have been out of time to issue a revised assessment. See Wyo. Stat. Ann. § 39-14-308(b)(iii) and (vii) (LexisNexis 2017).

See Board of Equalization Rules, Chapter 5: Equalization Standards and Procedures (Local Assessments), setting forth the procedure for the Board to "annually determine whether each county is in compliance with the fair market value standard and, if noncompliance is found, establish procedures for equalizing property values or otherwise reducing the inequitable assessment bias." Id. , § 2.

The DOR warns that this result would force the Board to perpetuate illegal and incorrect applications of the law, but the Board has the authority to correct such errors in its rulemaking capacity. Further, the tax assessment at issue here was for production years 2010-2012. We are confident that, now that the DOR believes it has discovered the correct statutory interpretation, it will be assessing taxes for subsequent years using its new approach, and the Board will have the opportunity to determine the issues properly raised in an appeal of that final determination.

Solvay argues that the Board's procedure deprived it of due process, but we do not address constitutional issues if we are able to resolve the case on other grounds. Wilson v. Bd. of Cty. Comm'rs of Cty. of Teton , 2007 WY 42, ¶ 14, 153 P.3d 917, 922 (Wyo. 2007).

See, e.g ., Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue , 2017 WY 6, ¶¶ 41-43, 387 P.3d 725, 735 (Wyo. 2017) ; State ex rel. Wyo. Dep't of Revenue v. Hanover Compression, LP , 2008 WY 138, ¶ 16, 196 P.3d 781, 787 (Wyo. 2008) ; RME Petroleum Co. v. Wyo. Dep't of Revenue , 2007 WY 16, ¶ 2, ¶¶ 40-42, 150 P.3d 673, 675, 688 (Wyo. 2007) ; Williams Prod. RMT Co. v. State Dep't of Revenue , 2005 WY 28, ¶¶ 17-22, 29, 107 P.3d 179, 185-88 (Wyo. 2005) ; Lance Oil & Gas Co. v. Wyo. Dep't of Revenue , 2004 WY 156, ¶ 31, 101 P.3d 899, 908 (Wyo. 2004) ; In re Appeal of Qwest Corp. from an Audit Assessment Decision of the Excise Div. of the Dep't of Revenue (7/1/97-12/31/01) , Docket No. 2003-92, 2004 WL 2132768 (Wyo. Bd. of Equalization Sept. 8, 2004)rev'd on other grounds by Qwest Corp. v. State ex rel. Wyo. Dep't of Revenue , 2006 WY 35, 130 P.3d 507 (Wyo. 2006) ; Airtouch Commc'ns, Inc. v. Dep't of Revenue, State of Wyo. , 2003 WY 114, 76 P.3d 342 (Wyo. 2003) ; RT Commc'ns, Inc. v. State Bd. of Equalization for State of Wyo. , 11 P.3d 915, 922 (Wyo. 2000) ; Amax Coal Co. v. Wyo. State Bd. of Equalization , 819 P.2d 825, 829-31 (Wyo. 1991).

See, e.g ., In re Request for Examination by Merit Energy Co. , Docket No. 2010-141, 2011 WL 7910750 (Wyo. Bd. of Equalization Sept. 27, 2011) ; In re Allegations by Douglas K. Minick, Cty. Assessor for Sheridan Cty., Wyo., of Violation of State Law Regarding the Equalization and Collection of Real Estate Taxes on Property Owned by Sheridan Cty. for Tax Years 1991 through 1998 , Docket No. 99-02, 2000 WL 33729312 (Wyo. Bd. of Equalization Dec. 29, 2000) ; In re Proceedings to Equalize the Level of Assessment of Cable TV Properties in Big Horn, Hot Springs, Johnson, Park, Sheridan, and Washakie Ctys., Wyo. , Equalization Order No. 92-1, 1992 WL 200902 (Wyo. Bd. of Equalization Aug. 12, 1992).

The majority initially is adamant that Wyo. Stat. Ann. § 39-11-102.1(c)(iv) cannot apply outside the Board's regulatory function, stating "[t]he language of Wyo. Stat. Ann. § 39-11-102.1(c)(iv), authorizing the Board to '[d]ecide all questions that may arise with reference to the construction of any statute affecting ... taxes,' applies to its regulatory function, and cannot be used to extend the Board's authority in its adjudicatory capacity." The majority then goes on to say, "the '[d]ecide all questions language' at (c)(iv) is only triggered either upon application of any person adversely affected, or in performing equalization functions." After noting the Board was not performing equalization functions, the majority concludes, "there was no application by a person adversely affected," because Solvay never sought the Board's construction of the statute, "it only requested a contested case hearing to challenge the DOR's valuation of its bagging deduction." Contrary to its earlier statement, this conclusion seems to recognize some Board authority to decide statutory construction questions in an adjudicatory capacity.

Instead, Solvay and the DOR mechanically applied Wyo. Stat. Ann. § 39-14-303(b) (2009-2012) in the same manner as it had been applied to Solvay's claimed bagging cost deduction in years and audits past. In two previous unchallenged decisions, In re Matter of FMC Wyoming Corp. , Docket No. 2011-30, §§ 57-62, 2013 WL 2467819 (Wyo. St. Bd. of Equalization Mar. 19, 2013) (FMC I ) and In re Matter of FMC Wyoming Corp. , Docket Nos. 2012-52, 2012-53, §§ 39-43, 2014 WL 5426152 (Wyo. St. Bd. of Equalization June 23, 2014) (FMC II ), the Board exercised its authority under Wyo. Stat. Ann. § 39-11-102.1(c)(iv) and affirmed the DOR's interpretation of Wyo. Stat. Ann. § 39-14-303(b)(ii) and (b)(iv) to preclude an additional deduction for processing costs involved with FMC's mine water process over and above the fixed industry factor of 32.5%. Notwithstanding a change in interpretive winds primed by FMC I and II , Solvay and the DOR assumed a separate bagging deduction applied under Wyo. Stat. Ann. § 39-14-303(b)(iv), but disputed whether the deduction should be greater than $114.61 per ton.

As the majority notes, the parties agreed the statutes are unambiguous.

The majority states, "the Board ordered the parties to submit briefs answering its questions on statutory interpretation regarding an entirely different methodology [;]" thus suggesting the Board ventured outside the statute and into the DOR's domain. (Emphasis added.) The Board's order, read in context, makes clear the Board requested additional briefing on "purely legal questions regarding [the parties'] initial agreed application of the industry factor method" and the "basic application of the trona tax valuation statute." The Board expressly recognized it cannot usurp the DOR's valuation or tax administration functions, but exercised its adjudicatory obligation in holding that the DOR acted contrary to statutory language and legislative intent in allowing any bagging cost deduction. The Board's determination that Wyo. Stat. Ann. § 39-14-303(b) allows zero deduction is not the same as second-guessing whether the DOR had properly arrived at the $114.61 per ton deduction Solvay disputed.

An agency may not declare a statute void or otherwise unenforceable, cannot invalidate a statute on constitutional grounds, enlarge the scope of or change a properly enacted statute, and cannot modify, abridge or otherwise change the statutory provisions under which it acquires authority. See, e.g. , Platte Dev. Co. v. Envtl. Quality Council , 966 P.2d 972, 975 (Wyo.1998).

The majority's application of the regulatory and adjudicatory distinctions we applied in Exxon Corp. v. Board of County Commissioners , 987 P.2d 158 (Wyo. 1999) is misdirected. In Exxon , it was important to distinguish between the Board's regulatory and adjudicatory functions as to the application of the provision now codified at Wyo. Stat. Ann. § 39-11-102.1(c)(x) (2017), because the issue was whether the regulatory proceeding under -102.1(c)(x) had an initiation deadline different from the deadline applicable to the appeal of a DOR decision to the Board. In fact, we acknowledged that -102.1(c)(x) proceedings are governed by Chapter 4 of the Board's rules, not Chapter 2, which establishes the deadline within which to file a contested case notice with the Board. Exxon Corp. , 987 P.2d at 164-65. Unlike the issue in Exxon , which required a specific adjudicatory/regulatory distinction in order to reconcile various deadlines, the scope of the Board's statutory interpretation authority under -102.1(c)(iv), which was nowhere addressed in Exxon , cannot be shown to confuse or contradict any other subsection of Wyo. Stat. Ann. § 39-11-102.1(c), whether pertinent to the Board's regulatory or adjudicatory function, or both.

The majority further confuses the extent to which established procedural rules in tax appeals apply to the Board's decision in this case. As this Court acknowledged in Airtouch Communications, Inc. v. Department of Revenue , 2003 WY 114, ¶ 12, 76 P.3d 342, 348 (Wyo. 2003), and consistent with the DOR's legislatively-delegated authority to value property for tax assessment, the Board must presume the DOR's valuation to be valid, accurate and correct, and that presumption can only be overcome by credible evidence to the contrary. However, the dispositive issue in this case is legal, not evidentiary. The presumption of validity afforded to the DOR's valuation determination in Airtouch does not extend to a DOR valuation determination based on an error of law.

Wyo. Stat. Ann. § 39-11-102.1(c).

Wyo. Bd. of Equalization Rules, ch. 2, § 2 (2006).

See, e.g. , Thunder Basin Coal Co. , 896 P.2d at 1339 (citing Fullmer , 858 P.2d at 1124 ).